**Allen C. SPICER, Plaintiff–Appellant,**

v.

**Steven ROSSETTI, John Brown, Jr., and Joseph Stroter, Defendants–Appellees.**

No. 97–3512.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1998.

Decided June 23, 1998.

Kenneth N. Flaxman (argued), Chicago, IL, for Plaintiff–Appellant.

Richard A. Devine, Office of the State's Attorney of Cook County, Chicago, IL, David Adelman (argued), Office of the State's Attorney of Cook County, Federal Litigation Division, Chicago, IL, Defendants–Appellees.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

BAUER, Circuit Judge.

On September 19, 1995, Allen Spicer, an inmate at the Cook County Department of Corrections, was involved in an altercation regarding the transfer of inmates. In an effort to end the disturbance, correction officers handcuffed several inmates and laid them face down. Spicer was among those inmates who were handcuffed. While in this face down position, he received injuries to his face and required emergency medical attention. Spicer sued the officers involved, and appeals from a verdict in their favor. In particular, Spicer argues that the district court erred in: (1) allowing defense counsel to comment during closing argument that Spicer's counsel did not believe Spicer; and (2) giving the jury a subjective good faith instruction. For the reasons set forth below, we reverse.

BACKGROUND

In September of 1995, Allen Spicer was a pretrial detainee at the Cook County Department of Corrections. On September 19, 1995, Captain Steven Rossetti went to move inmates who had been found guilty of disciplinary charges from Division 1, Tier C–2 to segregation. Several inmates refused to move, among them Allen Spicer. Spicer offered Captain Rossetti some unsavory words and barricaded himself, along with other inmates, in the entrance to Tier C–2. Captain

Rossetti assembled a group of officers, including appellees Correction Officers Joseph Stroter and John Brown, Jr., to regain control over Tier C–2. In an effort to maintain order, the officers pulled inmates from their cells, handcuffed them, and ordered them to lie face down on the floor. Spicer was handcuffed, brought into another room, and directed to lie on his stomach by Correction Officer Douglas Cobbs. Officer Cobbs testified that after he placed Spicer on the floor and turned his attention to another inmate, he heard Spicer sigh "like someone was being hurt" and turned to see blood coming from the left side of Spicer's forehead. Cobbs did not know how Spicer received this injury. Spicer, however, testified that his injury resulted from kicks to the head administered by Officers Brown and Stroter while Captain Rossetti stood by. Officers Brown and Stroter denied ever striking or kicking Spicer.

Spicer received emergency medical treatment on September 19. He was treated by two physicians who both noted that he had a small laceration on his forehead and an abrasion on his right cheek about a half an inch from his zygomatic arch. On October 1, 1995, Spicer requested to see a physician because he was experiencing continuing pain and had noticed a "dent" in his right cheek. X-rays revealed that Spicer had a fractured right zygomatic arch, and he underwent corrective surgery.

Spicer filed a lawsuit against the officers. The primary dispute at trial was whether he received the injury to his zygomatic arch during the incident of September 19, 1995, and if so, whether or not defendants caused the injury. Each defendant testified that he had done nothing to injure Spicer, nor did he see any other person do anything to injure Spicer. In closing argument, counsel for Spicer stated: "All I think we can all say, as this case is over, we don't know everything that happened on September 19th, 1995. We really don't know what the correctional officers did inside the tier. We don't know—we didn't hear from all of the officers, we didn't hear from all of the prisoners. We really don't know what happened."

The remaining colloquy went as follows:

Defense Counsel: ... His own lawyer tells you we will never know. What does that tell you about the case. It tells you his own lawyer doesn't believe his client. That he tells you—

Plaintiff's counsel: That's improper, Judge. He knows I believe my client.

The Court: Well, it's argument.

Defense Counsel: Ladies and gentlemen, he just stood up here and said we will never know how Mr. Spicer got injured. He's had conversations with his client and he's not even sure. He's not even convinced.

Plaintiff's Counsel: That is now beyond the pale. Every conversation I've had with my client, he's told me the truth, the same testimony he gave—

Defense Counsel: Objection to counsel arguing in front of the jury. He had his opportunity, your Honor.

The Court: This is argument. The jury understands this is not evidence. This is argument. Counsel can make his argument as he chooses.

Later in the trial, over Spicer's objection, the jury was given the following instruction:

If you find that the force used by any defendant could reasonably have been thought to be necessary under the circumstances and conditions which existed as reasonably perceived by that defendant on the basis of the facts known to him, then your verdict must be for that defendant and against the plaintiff.

The jury returned a verdict in favor of each defendant. Spicer appeals.

### ANALYSIS

■ Spicer argues to this court that a new trial is required because defense counsel's closing argument went beyond the range of acceptable advocacy. Spicer contends that defense counsel improperly commented during closing argument that plaintiff's counsel did not believe his client. In particular, Spicer objects to the following remarks:

Defense Counsel: His own lawyer tells you we will never know. What does that tell

you about this case. It tells you his own lawyer doesn't believe his client.

\* \* \*

Defense Counsel: Ladies and gentlemen, he just stood up here and said we will never know how Mr. Spencer got injured. He's had conversations with his client and he's not even sure. He's not even convinced.

■ Spicer's counsel objected immediately to these remarks, but the district court overruled his objections. While we recognize that " 'improper comments during closing argument rarely rise to the level of reversible error,' " *Probus v. K–Mart, Inc.,* 794 F.2d 1207, 1210 (7th Cir.1986) (quoting *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1311 (7th Cir.1985)), we believe that defense counsel's comments here warrant reversal. Just as counsel may not express his beliefs regarding the honesty of the opposing party's witnesses, *Probus,* 794 F.2d at 1211, he may not express his belief regarding opposing counsel's opinions of honesty. These opinions have no place in a court of law, and defense counsel's conduct was grossly inappropriate. Plaintiff's counsel was correct in objecting to the ill-chosen words, and the district court erred in overruling his objection. We cannot say that these comments might not have influenced the jury's verdict; indeed since the case turned entirely on Spicer's credibility, versus that of the guards, the improper comments were an egregious attack into the heart of the plaintiff's case. We therefore set aside the jury's verdict on the basis of misconduct by appellees' counsel during closing arguments.

■ Turning to the jury instruction, Spicer argues that the district court erred in providing the jury with the following instruction:

If you find that the force used by any defendant could reasonably have been thought to be necessary under the circumstances and conditions which existed as reasonably perceived by that defendant on the basis of the facts known to him, then your verdict must be for that defendant and against the plaintiff.

We agree that the instruction was improperly given. There is no suggestion that any force applied by the defendant officers caused the injury complained of; indeed, the officers denied striking or kicking the defendant at any time. Unless there is some testimony that something other than a kick or a blow as described by the plaintiff caused the injury complained of, this instruction makes little sense. While it is true that officers are not liable for injuries that result from their lawful application of force, the only force any officer admitted here was the application of handcuffs. The instruction was therefore erroneously given.

CONCLUSION

For the reasons set forth above, we REVERSE the judgment of the district court and REMAND this case for a new trial.