In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3679

BYRON CHRISTMAS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 4675—**Blanche M. Manning**, *Judge.*

ARGUED DECEMBER 1, 2011—DECIDED JUNE 4, 2012

Before EASTERBROOK, *Chief Judge*, CUDAHY, *Circuit Judge*, and PRATT, *District Judge.**

PRATT, *District Judge.* On August 27, 2007, Byron Christmas and Tiffany Banks were arrested by Chicago police

---

\* The Honorable Tanya Walton Pratt, District Judge for the United States District Court for the Southern District of Indiana, is sitting by designation.

officers and charged with felony drug possession. Following a bench trial, Christmas and Banks were acquitted of all criminal charges. On August 17, 2008, Christmas, Banks, and Banks on behalf of her infant daughter ("Plaintiffs"), sued the City of Chicago and several of its police officers asserting violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and state law claims. The Defendant officers include: (1) Marcos Bocanegra ("Officer Bocanegra"); (2) Arletta Kubik ("Officer Kubik"); (3) Luis Loaiza ("Officer Loaiza"); (4) Peter Medina ("Officer Medina"); (5) Arnoldo Rendon ("Officer Rendon"); and (6) Carlos Rojas ("Officer Rojas") (collectively, the "Defendants"). On February 22, 2010, a civil jury trial commenced on Plaintiffs' § 1983 claims and claims for false arrest, unlawful search, conspiracy, malicious prosecution, battery, and intentional infliction of emotional distress. After seven days of trial, the jury returned a verdict in favor of the Defendants on each of the Plaintiffs' claims.

During trial, Plaintiffs moved for a mistrial and at the conclusion of the trial Plaintiffs filed a motion for a new trial. In both motions, Plaintiffs argued that they were denied a fair trial due to the Defendants' counsel's repeated violations of the district court's evidentiary rulings and counsel's improper comments to the jury. The district court denied both motions. On appeal, Plaintiffs argue that the district court abused its discretion by denying their motions for a mistrial as well as their motion for a new trial. For the reasons that follow, we affirm on both issues.

## I. Factual Background

### A. Pre-Arrest Factual History

The parties presented divergent testimony concerning the events which occurred on August 27, 2007. Officer Loaiza testified that while on patrol with Officer Rendon, he received an assignment that "narcotics––or drug sales were occurring on the 3400 block of West Douglas in the alley by a 500-pound male black who was inside a gold-colored vehicle parked there in the alley." According to Officer Loaiza, the 3400 block of West Douglas was a "high narcotic area" that involved "[a] lot of drug sales, robberies, rapes, [and] shootings." In addition, Officer Loaiza testified that he had received previous assignments based on 911 calls placed to the police department on August 25 and 26, 2007 about drug sales occurring at that same location. However, when the officers drove by the area to investigate, they found no one there. After receiving the August 27th assignment, both Officer Loaiza and Officer Rendon proceeded to the 3400 block of West Douglas to set up surveillance.

As the surveillance leader, Officer Loaiza selected a surveillance position with a clear line of sight to the alley. During his surveillance, Officer Loaiza testified that he observed a gold colored vehicle in the alley with a heavy-set black man seated in the driver seat, which he later learned was Christmas. In a span of approximately fifteen minutes, Officer Loaiza observed what appeared to be four separate drug transactions between Christmas and four individuals. After the fourth alleged drug transaction occurred, Officer Loaiza immediately alerted

his partner, Officer Rendon, to notify additional law enforcement officers to come to the alley.

Officers Medina, Bocanegra, Kubik, and Rojas arrived at the alley at approximately 1:00 p.m., and the officers approached Christmas's vehicle. While walking toward the vehicle, Officer Medina observed Christmas swipe something from the central console of his vehicle. Suspecting Christmas of dealing drugs, Officer Bocanegra ordered him to exit the vehicle, and proceeded to conduct a pat-down search of Christmas. At the same time, Officer Medina conducted a search of the vehicle and found a bag which contained 32 smaller bags filled with what officers suspected to be heroin. Immediately after Officer Medina's discovery, Officer Bocanegra handcuffed Christmas and placed him under arrest.

After being placed under arrest, Officer Loaiza testified that Christmas began "bragging" and stated, "I've got about 20 grams of blow coming to my crib right now by my girl." Officer Loaiza testified that Christmas's statement led him to believe that another drug transaction may be occurring soon. As a result, Officer Loaiza ordered the other officers to leave the alley and set up a second surveillance of the area. When Banks appeared in the alley, Officer Kubik confronted her and identified herself as a police officer. Immediately, Banks dropped a package she was carrying on the ground, which the officers suspected contained narcotics. At that time, Officer Kubik proceeded to conduct a pat-down search of Banks; and subsequently, Banks was taken into custody. All the officers denied strip searching either of the Plaintiffs.

Both Christmas and Banks testified that on August 27, 2007, they went to the 3400 block of West Douglas in Chicago to meet with a friend who lived in the neighborhood. Christmas was driving Banks's gold Dodge Intrepid on that day. Upon reaching the 3400 block of West Douglas, Christmas drove the Dodge Intrepid into the alley behind a multi-unit apartment building and stopped the vehicle. Banks testified that at this time she needed to use the bathroom and decided to ask Christmas's friend if she could use his bathroom in his apartment. Banks testified that she took her four-week old daughter and the car seat carrier with her to the friend's apartment.

Christmas testified that Officer Loaiza approached and ordered him to exit the vehicle when he was in the alley. Upon exiting, Christmas alleged that Officer Loaiza ordered him to submit to a strip search. Christmas testified that he took off his clothes, at which point Officer Loaiza conducted a search of his person including an anal cavity search. At trial, Officer Loaiza denied ordering and conducting a strip search or anal cavity search on Christmas.

Additionally, Banks testified that she was ordered to submit to a strip search in the alley and that after she removed her clothes, Officer Kubik conducted a search of her person. Officer Kubik denied that she ever ordered Banks to submit to a strip search. Banks further testified that after the Defendants brought Christmas and herself to the police station, they left their baby behind at the scene. At trial, the Defendants denied Plaintiffs' allegations concerning leaving the baby and testified that they never saw a baby at the scene.

Christmas and Banks were both charged with felony drug offenses. At their criminal trial, Christmas and Banks were acquitted of all charges following a bench trial.

## B.  Christmas and Banks File a Civil Suit

On August 17, 2008, Christmas and Banks filed a civil suit against the City and six police officers in the Federal District Court for the Northern District of Illinois. In their eight count Complaint, Christmas and Banks asserted Fourth Amendment claims, a due process claim, a Monell claim, conspiracy, intentional infliction of emotional distress, battery, false imprisonment, and malicious prosecution.

Prior to trial, Plaintiffs filed a number of pretrial motions including a motion *in limine* to bar testimony from the anonymous 911 caller and any "related recordings and transcripts, and other hearsay OEMC records and audio." In particular, Plaintiffs moved to bar the August 27, 2007 911 call and its corresponding dispatch in which a dispatcher informed officers that a 911 caller stated the officers "[had] the right guy." Plaintiffs argued that the evidence from the 911 calls was hearsay or otherwise misleading. Defendants countered by arguing that the 911 evidence was relevant and not inadmissible hearsay because it would be offered to establish whether the officers had probable cause for Christmas's arrest.

On February 11, 2010, the district judge initially stated that the 911 evidence was not inadmissible hearsay, but she reserved ruling on its admissibility until the

record was more developed regarding which officers actually heard the dispatches. Later, the district judge barred the August 26 and 27, 2007 recordings of the 911 dispatches in a written ruling, but concluded that officers could testify to information received from the dispatcher: (1) before the time of the Plaintiffs' arrests; or (2) before the time the Plaintiffs were charged. In addition, the district judge limited testimony relating to the August 27, 2007 dispatch only to those defendants in the malicious prosecution claim. During trial, Plaintiffs dropped their malicious prosecution claim against Officers Bocanegra, Rendon and Rojas. Afterward, Plaintiffs renewed their motion to exclude the August 27, 2007 dispatch evidence. The district judge, in denying their renewed motion, ruled that the August 27, 2007 dispatch was relevant if any of the remaining defendants to the malicious prosecution claim learned of the contents before the Plaintiffs were charged.

## C.  The Trial

   The jury trial commenced on February 22, 2010. At the conclusion of the Plaintiffs' opening statement, Defendants' counsel requested a sidebar discussion with the district judge to inquire about referencing certain 911 calls in their opening statement. During the sidebar discussion, one of Defendants' attorneys spoke loudly when she informed the district judge that an anonymous 911 caller stated she was "scared to death" of Christmas, adding "thank the Lord she is not in this courtroom." After this sidebar discussion, Defendants delivered their

opening statements and made reference to an August 25, 2007 911 call and commented on the details of the August 27, 2007 assignment heard by Officer Loaiza. Immediately, Plaintiffs' counsel objected to Defendants' counsel's references to both 911 calls. The district judge sustained both objections and during the subsequent sidebar conference admonished Defendants' counsel that those specific 911 calls were barred pursuant to the court's previous ruling on the Plaintiffs' motions *in limine*.

Following this sidebar discussion, Plaintiffs moved for a mistrial on two issues. First, Plaintiffs argued that their clients, sitting at counsel table, overheard the sidebar comments made by Defendants' attorney relating to Christmas and, therefore, the jury must have also heard the comments as well. Thus, Plaintiffs argued they were denied a fair trial because the anonymous 911 caller was not going to be a witness in the case, and they would have no opportunity to cross-examine the caller. Second, Plaintiffs argued that a mistrial was appropriate because the jury heard the references to 911 calls in violation of the court's previous rulings. The court denied the Plaintiffs' motion for a mistrial.

Next, during the course of trial Defendants called, among other witnesses, Officer Loaiza, Laura Dunaj ("Dunaj"), and Officer Rendon to testify in their case-in-chief. Before Officer Loaiza testified, the district court reiterated its expanded ruling as it related to evidence associated with the 911 calls from August 26 and 27, 2007. Officer Loaiza, despite being present during the court's reminder,

proceeded to testify about the August 27, 2007 assignment he received regarding the sale of drugs at the 3400 block of West Douglas by a 500 pound black male in a gold car. Additionally, after just hearing the nature of the court's ruling, Officer Rendon testified in detail about the August 26, 2007 calls stating the following: "[I]t was like three or four previous assignments which we received of narcotic sales occurring at that location with the same description."

Defendants also called Laura Dunaj, a call taker from Chicago's 911 call center. After being sworn-in by the court, Dunaj began to answer preliminary questions about how 911 calls are logged into the center's system. Shortly after Dunaj began to testify, Plaintiffs objected to her testimony on the grounds that the Defendants were attempting to lay a foundation for 911 calls that the district court has previously excluded. The district court then excused the witness from the stand before she could testify further on substantive matters involving 911 calls to the call center.

One of the last witnesses called by the Defendants at trial was Officer Rendon. While Officer Rendon was testifying about the events that unfolded on August 27, 2007 at the 3400 block of West Douglas, he voluntarily gave testimony that after Christmas's arrest he heard a dispatch stating that the officers "[had] the right guy." Plaintiffs immediately objected to Officer Rendon's testimony and the district court sustained the objection and gave the jury the following instruction: "The last question and answer is to be totally disregarded. It will be stricken from the record."

During closing argument, Defendants' counsel argued to the jury that opposing counsel did not believe in their clients. To get her point across to the jury, Defendants' counsel stated "They didn't even ask these officers: Did you or did you not do this? Why? They (opposing counsel) don't believe it themselves." Plaintiffs' counsel objected to this statement, and the district court sustained the objection. In addition to these comments, at times during her closing argument, Defendants' counsel appeared to impose her own views on the jury and engage in vouching.

While giving jury instructions, the district judge instructed the jury that attorneys' comments are not evidence. The judge further instructed the jury that the burden of proof on each claim was preponderance of the evidence, in which they must be persuaded that it is more probably true than not. In addition, the judge instructed the jury not to consider as evidence any testimony or exhibit that was struck by her at trial.

After deliberations, the jury returned a verdict in favor of the Defendants on all of Plaintiffs' claims. Plaintiffs then made a motion for a new trial based on: (1) the Defendants' witnesses violating the district court's evidentiary rulings; (2) the cumulative effect of the Defendants' conduct in violation of the district court's evidentiary rulings; and (3) the comments of Defendants' counsel during their opening and closing statements in the presence of the jury. The district court denied the Plaintiffs' motion. The Plaintiffs now appeal the district court's denial of its motion for a mistrial and its motion for a new trial.

## II. Analysis

On appeal, Christmas and Banks challenge the district court's denial of their motion for a mistrial based on the Defendants' counsel's comments during opening statements. They further challenge the district court's denial of their motion for a new trial after Defendants' witnesses violated the district court's evidentiary rulings, while testifying in court and when Defendants' counsel made improper comments in the presence of the jury.

### A. Plaintiffs' Motion for a Mistrial

We review the district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Lauderdale*, 571 F.3d 657, 660 (7th Cir. 2009). A district court abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact. *Shakman v. City of Chicago*, 426 F.3d 925, 932 (7th Cir. 2005). In addition, we utilize a highly deferential standard of review because, "the trial judge is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006). Nevertheless, when reviewing the denial of a mistrial in this context, we must ultimately determine whether the plaintiffs were deprived of a fair trial. *United States v. Clarke*, 227 F.3d 874, 871 (7th Cir. 2000).

### 1.  Defendants' Counsel's Comments During Opening Statements

Plaintiffs argue they were denied a fair trial when Defendants' counsel stated in his opening statement that the officers received 911 calls which indicated drug sales were taking place at the 3400 block of West Douglas. Specifically, they contend that any references to the 911 calls were barred by the district court's motion *in limine* ruling. Plaintiffs argue that Defendants' counsel's statements improperly prejudiced the jury. We disagree.

The references to the August 25 and 27, 2007 911 calls made by the Defendants' counsel during opening statements were proper. The district court's February 11, 2010 ruling on Plaintiffs' motion *in limine* did not bar references to the August 25, 2007 911 call. Further, the district court reserved ruling on the admissibility of the August 27, 2007 dispatch statement that officers "[had] the right guy". Subsequently, the district court ruled that the August 27, 2007 911 call was admissible with respect to Plaintiffs' malicious prosecution claim. Because the district court's rulings, at the time opening statement were made, did not bar either of the two 911 calls, Defendants' counsel's references were proper. *See Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008) (concluding that defense counsel's statements during closing arguments did not warrant a new trial because the statements were not improper). Thus, the references made by Defendants' counsel did not deny the Plaintiffs a fair trial.

Even if the admissibility of the August 27, 2007 911 call was questionable after the district court's February 11, 2010

ruling, Plaintiffs would still not be deprived of a fair trial because the district court found the August 27, 2007 911 call was admissible in a subsequent written ruling. *See United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir. 1991) ("[W]e refuse to hold that the district court abused its discretion by denying the defendant's motion for mistrial because the record fails to convince us that the defendant suffered any prejudice from the reference in the opening statement to evidence which the court subsequently found to be admissible."). Moreover, any potential harm caused by the initial references to the 911 calls made by Defendants' counsel in his opening statement was ameliorated by the district court's instruction to the jury that statements by counsel are not evidence. "As a general rule, we assume that the jury obeys the judge's instructions." *Lopez v. Thurmer*, 573 F.3d 484, 496 (7th Cir. 2009) (internal quotations and citation omitted). Here, the district judge initially sustained Plaintiffs' objection and gave a curative instruction to the jury. Thus, the record fails to convince us that the Plaintiffs suffered any prejudice from the references to the 911 calls during opening statements.

## B.  Plaintiffs' Motion for a New Trial

Next, Plaintiffs argue that the district court abused its discretion in denying their motion for a new trial under Federal Rule of Civil Procedure 59(a). On appeal, Plaintiffs contend that three witnesses violated the district court's evidentiary rulings. According to Plaintiffs, these violations establish a sufficient basis for a new trial.

Our review of the district court's denial of a motion for a new trial is, once again, for abuse of discretion. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010). In reviewing a denial of a motion for a new trial, we reverse only if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996). Only the latter concern is implicated here.

### 1.   Officer Loaiza's Testimony

First, Plaintiffs contend they were denied a fair trial when Officer Loaiza described in detail the previous assignments he received before August 27, 2007, despite the court's ruling prohibiting such an explanation. As discussed previously, Officer Loaiza initially testified to receiving a dispatch on August 27, 2007 informing him to look for a 500 pound man selling drugs from a gold-colored car. While Officer Loaiza was allowed to testify in detail about this dispatch, the district court barred him from testifying about previous dispatches which included a similar description of the suspect. Nonetheless, Officer Loaiza proceeded to testify, in violation of the court's ruling, that prior to August 27, 2007 he received previous dispatch notices that included the same description of the suspect in the August 27, 2007 dispatch. At trial, Plaintiffs did not immediately object to Officer Loaiza's testimony, but instead, waited until the conclusion of his examination before asking the court to admonish the witness to adhere to the court's rulings. In denying

the Plaintiffs' motion for a new trial, the district court found that Plaintiffs failed to properly and timely raise an objection.

To preserve an issue for appellate review, Federal Rule of Evidence 103(a) provides that a party seeking to object to the admission of evidence must make a "timely objection or motion to strike" before the district court. Fed. R. Evid. 103(a). "When a party fails to timely and properly object at trial to the admission of evidence, the party is deemed to have waived the issue on appeal." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 727 (7th Cir. 1999). In *Jones,* we found that an objection at the end of a witness's testimony was "sufficiently contemporaneous" to avoid waiver. *Id.* But *Jones* is readily distinguishable.

Unlike in *Jones*, Plaintiffs did not object to the officer's specific testimony at trial, but instead asked the district judge to admonish the witness to adhere to the court's rulings. By failing to object, Plaintiffs may not raise the issue for the first time in a motion for a new trial or on appeal. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) ("When a defendant does not object to the admission of evidence during the trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal."). Plaintiffs' failure to timely and properly object constitutes waiver. *See Griffin v. Foley*, 542 F.3d 209, 218-19 (7th Cir. 2008). Thus, the district court did not abuse its discretion in denying Plaintiffs' motion for a new trial.

### 2. Chicago's 911 Call Center Witness

Next, Plaintiffs argue that Dunaj's testimony deprived them of a fair trial because it gave the jurors an impression that 911 calls were being withheld. As such, Plaintiffs contend that Dunaj's testimony substantially influenced the jury, depriving them of a fair trial. We disagree.

To reiterate, in determining whether to grant a new trial under Rule 59 of the Federal Rules of Civil Procedure, "[a] court should only grant a new trial if the improperly admitted evidence had a 'substantial influence over the jury,' and the result reached was 'inconsistent with substantial justice.'" *Schick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002) (quoting *Agushi v. Duerr*, 196 F.3d 754, 759 (7th Cir. 1999)). Here, Dunaj testified briefly on the procedures taken at the call center when a 911 call is received. Subsequently, Plaintiffs objected to Defendants' counsel's attempt to lay a foundation with Dunaj relating to 911 calls received on August 26, 2007. After sustaining the objection, the district court excused Dunaj from the witness stand and emphasized the court's previous ruling on the admissibility of the August 26, 2007 assignments.

After reviewing the record, we are not persuaded by Plaintiffs' arguments that the jury was substantially influenced by Dunaj's testimony. Notably, the district judge, in denying Plaintiffs' request to cross examine her, said "she has not testified to anything." Furthermore, Dunaj was only on the witness stand for a very brief period. Given the unique circumstances surrounding this witness and the district court's broad discretion

in ruling on evidentiary questions during trial, *see Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002), we find no indication that the district court abused its discretion in denying Plaintiffs' motion for a new trial.

### 3.  Officer Rendon's Testimony

Plaintiffs further argue that a new trial is warranted because Officer Rendon's testimony about hearing we "[had] the right guy" over the dispatch, violated the district court's evidentiary ruling. Defendants argue that any harm caused by Officer Rendon's comment was quickly and adequately addressed by the district court with a curative jury instruction. We agree.

Immediately following Officer Rendon's improper comment, the district court sustained Plaintiffs' objection and gave the following jury instruction: "The last question and answer is to be totally disregarded. It will be stricken from the record . . . ." Again, we presume that juries follow instructions given to them by the court. *See Pickett*, 610 F.3d at 446; *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 311 (7th Cir. 2010); *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 702 (7th Cir. 2007). Here, the district court quickly informed the jury to disregard Officer Rendon's previous statement. Officer Rendon's isolated comment was made during the course of a week-long trial and was adequately addressed by the district court through a curative instruction. *See United States v. Humphrey*, 34 F.3d 551, 557 (7th Cir. 1994) (when considering whether a curative instruction

cured improper testimony, "the court should evaluate the timeliness and effectiveness of the curative instruction as well as the record as a whole . . . ."). Moreover, Plaintiffs' claim that Defendants poisoned the jury's perception of Christmas is weakened by the fact that the jury was also aware that Christmas had been acquitted of all drug charges in his criminal case. Given the timeliness of the district court's curative instruction in response to the isolated comment made by Officer Rendon, we find that the district court did not abuse its discretion in denying Plaintiffs' motion for a new trial.

### C.  Defendants' Counsel's Comments During Trial

Plaintiffs also argue that a new trial is warranted because Defendants' counsel made improper comments during trial and closing arguments. We disagree. Plaintiffs presented this issue in their Rule 59(a) motion to no avail, so we review their appeal under the abuse of discretion standard. *Pickett*, 610 F.3d at 445.

#### 1.   Comments During Sidebar Discussion

First, Plaintiffs argue that certain comments made by Defendants' counsel during a sidebar discussion were overheard by the jury; therefore, a mistrial or a new trial is warranted. We find Plaintiffs' arguments unpersuasive on both fronts. Plaintiffs contend that Defendants' counsel "shouted" that the 911 caller was "scared to death" of Christmas and stated "thank the Lord she is not in this courtroom" loud enough for the jury to overhear

her comments. The district judge had turned on the white noise machine to prevent the jurors from hearing the particular sidebar discussion. Because the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial, this court will not overturn the district court's decision when it was "satisfied" that the statements "were not so loud that jurors could have heard them over the white noise . . . ." *See United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) ("The district court judge is always in a better position than appellate judges to assess the probable reactions of jurors in a case over which that district judge has presided."). Because we are confined to reading the trial court's transcript and cannot duplicate the district judge's experience of the trial, we defer to the district judge and find no abuse of discretion occurred.

### 2. Defendants' Counsel's Other Comments During Trial and Closing Arguments

Next, Plaintiffs contend that Defendants' counsel made other improper comments to the jury during the course of the trial. To obtain a new trial based on attorney misconduct, Plaintiffs must show both that the misconduct occurred and that it prejudiced their case. *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002). As we have stated earlier, we defer to the district court because of its unique position to view the evidence and the course of trial. *See id.* (given a district judge's familiarity with the parties, the litigation, and the credibility of

the evidence at trial, the question of whether a party was prejudiced is necessarily deferential to the district court); *see also Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). Here, the district court noted that the comments made by the Defendants' counsel during trial were kept "from becoming over zealous through effective objections"; thus, a new trial was not warranted. Moreover, the district court instructed the jury that statements by the attorneys should not be considered as evidence. Furthermore, Plaintiffs are not very precise on how Defendants' counsel's conduct prejudiced the jury. It appears the district judge gave both parties latitude in presenting their cases to the jury. *See Whiting*, 294 F.3d at 946 (denying defendant's motion for a new trial when defense counsel was not impeded from presenting his case to the jury despite plaintiff's counsel's conduct). Accordingly, we find that Defendants' counsel's allegedly improper comments at trial do not present grounds for reversal.

Next, Plaintiffs argue that the following comments made by Defendants' counsel were improper and constituted reversible error.

> "They [opposing counsel] didn't even ask these officers: Did you or did you not do this? Why? They don't believe it themselves."

> "Hit me, yell at me, do anything, but ultimately this is the time I finally get to speak as a complete and total advocate to say that they did not do this, that they are absolutely innocent."

　　"Are they perfect? No, but that's not the standard. They are not guilty."

Relying on *Spicer v. Rossetti*, 150 F.3d 642 (7th Cir. 1998), Plaintiffs contend that these comments made by Defendants' counsel warrant a new trial. In *Spicer*, the defense counsel made repeated comments during closing argument that plaintiff's counsel did not believe the plaintiff. *Id.* at 643. When plaintiff's counsel objected to these comments, the district court overruled his objections stating that the comments were proper argument. *Id.* at 644. This court subsequently ruled that the district court erred in overruling plaintiff's objections and found that a new trial was warranted because counsel may not express his beliefs regarding opposing counsel's opinions of honesty. *Id.* However, this case is distinguishable from *Spicer*.

Unlike in *Spicer*, here, the district court immediately sustained Plaintiffs' objection during Defendants' closing argument. In addition, Defendants' counsel only made one brief comment regarding opposing counsel's belief in his client, instead of repeated comments as occurred in *Spicer*. In addition, we find that the other comments identified by Plaintiffs as being improper did not prejudice the Plaintiffs' case because the district court gave a curative instruction and informed the jury of the proper burden of proof. *See Valbert v. Pass*, 866 F.2d 237, 241 (7th Cir. 1989) ("[A]n instruction to the jury stating that the arguments of counsel are not evidence can mitigate the harm potentially caused by improper statements made by counsel during closing argument."). As we have repeat-

edly recognized, "improper comments during closing arguments rarely rise to the level of reversible error," *id.* (citations omitted), and we conclude that Defendants' counsel's comments do not rise to such a level to warrant a reversal. Accordingly, we find that the district court did not abuse its discretion in denying Plaintiffs' Rule 59(a) motion as it relates to Defendants' counsel's comments during trial and closing arguments.

## D.  Cumulative Effect

Lastly, Plaintiffs argue that the cumulative effect of Defendants' alleged violations of the district court's evidentiary rulings along with their conduct at trial deprived them of a fair trial, and thus the district court abused its discretion when it denied their motion for a new trial. To prevail on their cumulative effect argument, Plaintiffs must show: "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered [their] trial fundamentally unfair." *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011) (citing *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000)). "In conducting this analysis, we examin[e] . . . the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Id.*

Having reviewed the record and analyzed the Defendants' counsel's conduct with respect to its cumulative

effect upon the jurors, we find that the conduct did not deprive the Plaintiffs of a fair trial, for the reasons we have given above. When improper references were made by Defendants' witnesses or counsel during the course of the trial, the district judge immediately sustained Plaintiffs' objections and offered curative instructions to the jury. Accordingly, we cannot conclude that the Defendants' conduct had a substantial influence over the jury that would require a new trial. *See Humphrey*, 34 F.3d at 557; *see also United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("If there are no errors or a single error, there can be no cumulative error."). We therefore conclude the district court did not abuse its discretion in denying Plaintiffs' motion for a new trial.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Plaintiffs' motion for a mistrial as well as the denial of Plaintiffs' motion for a new trial.