**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

JOHN CLINT DRAPER,
    *Plaintiff-Appellant*,

v.

D. ROSARIO, Officer; E.
ROGERS, Lieutenant,
    *Defendants-Appellees.*

</td>
<td>

No. 14-16340

D.C. No.
2:10-cv-00032-KJM-EFB

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted May 11, 2016
San Francisco, California

Filed September 7, 2016

Before: Kim McLane Wardlaw, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge Bea

**SUMMARY**[*]

**Civil Rights**

In an action brought pursuant to 42 U.S.C. § 1983 by a California state prisoner, the panel affirmed the district court's dismissal of plaintiff's procedural due process claim, affirmed the district court's evidentiary rulings, and vacated the district court's award of costs in favor of defendants and remanded.

Plaintiff alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment stemming from a physical altercation with a prison officer. Plaintiff also alleged that in the administrative disciplinary proceeding that followed the altercation, the presiding officer deprived plaintiff of a fair hearing in violation of his Fourteenth Amendment procedural due process rights.

The panel affirmed the district court's dismissal of plaintiff's procedural due process claim for failure to exhaust administrative remedies under the Prison Litigation Reform Act. The panel held that even though defendants filed an unenumerated Rule 12(b) motion rather than a motion for summary judgment on the exhaustion issue, remand was not necessary because the district court applied the correct summary judgment standard. The panel further held that because plaintiff failed to rebut defendants' evidence of non-exhaustion, the district court properly dismissed the claim.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Affirming the district court's evidentiary rulings, the panel held that the district court did not err by excluding testimony from an inmate witness. The panel further held that counsel in a civil trial may not rely on evidence outside the record to vouch for the credibility of witnesses. In this case, defense counsel improperly vouched for the credibility of correctional officer witnesses during closing argument. On plain error review, however, the district court's failure to correct the error sua sponte did not warrant reversal.

Finally, the panel held that because several factors weighed heavily against a large cost award in this case, and severe injustice would result from such an award, the district court abused its discretion in taxing costs of $3,018.35 against plaintiff. Accordingly, the panel vacated the cost award and remanded for the district court to reconsider whether a cost award was warranted, and, if so, an appropriate amount, in light of the panel's opinion.

Concurring in part and dissenting in part, Judge Bea agreed with the majority that the judgment in favor of the defendants should be affirmed. He dissented in part, stating that the district court did not abuse its discretion in taxing costs against the plaintiff because the district court justifiably followed the presumption of taxing costs against the losing party.

## COUNSEL

Matthew Guarnieri (argued) and Paul R.Q. Wolfson, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for Plaintiff-Appellant.

Suzanne Antley (argued), Deputy Attorney General; Thomas S. Patterson, Supervising Deputy Attorney General; Jonathan L. Wolff, Senior Assistant Attorney General; Kamala D. Harris, Attorney General; Office of the Attorney General, San Diego, California, for Defendant-Appellee D. Rosario.

## OPINION

PAEZ, Circuit Judge:

In this prisoner civil rights action, plaintiff John Clint Draper ("Draper") alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment stemming from a physical altercation with defendant Officer David Rosario ("Rosario"). Draper also alleged that in the administrative disciplinary proceeding that followed the altercation, the presiding officer, defendant Lieutenant E. Rogers ("Rogers"), deprived him of a fair hearing in violation of his Fourteenth Amendment procedural due process rights. The district court dismissed the due process claim for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e(a). The Eighth Amendment claim was tried before a jury, which returned a verdict in favor of Rosario. On appeal, Draper argues that the district court erred in dismissing his procedural due process claim and in excluding the testimony of a certain prisoner who

allegedly witnessed the altercation. He also argues that the district court erred in allowing opposing counsel to make improper statements during closing argument. Finally, Draper appeals the district court's order taxing costs totaling $3,018.35.

We affirm the district court's dismissal of Draper's procedural due process claim and the court's evidentiary rulings. We conclude that defense counsel improperly vouched for the credibility of correctional officer witnesses during closing argument, but on plain error review, the district court's failure to correct the error sua sponte does not warrant reversal. Finally, we hold that the district court abused its discretion in awarding $3,018.35 in costs. We therefore affirm in part, vacate the award of costs, and remand.

## I.

At the time of the altercation, Draper was a 61-year-old prisoner housed at the California State Prison in Solano ("C.S.P.-Solano"). He was considered mobility impaired and used a cane to walk. He was assigned to work as a porter in the prison, where his job was to clean tables in Building Four. On September 9, 2009, Rosario accused Draper of not cleaning the tables and ordered him to report to the correctional officers' office. Draper complied, and while he stood outside the office, the two had a conversation about whether Draper had performed his porter duties. Draper became upset, swore at Rosario, and accused him of lying. Rosario claimed that Draper then stepped into the office across a red line delineating an area that prisoners could not enter without permission, and that he told Draper to step back, which Draper did. Draper disputes that he ever stepped

over the red line. Rosario then ordered Draper to drop his cane and to put his hands behind his back. Draper complied, and Rosario placed him in handcuffs.

What happened next is disputed.[1] Draper testified that Rosario suddenly slammed him against the sally port gate that leads out of Building Four. Draper explained that he put a foot out to try to stop himself from "hitting the grill gate with full force" but that he still "hit the grill gate hard." Draper testified that the force of Rosario slamming him against the gate caused him to bounce off and fall to the ground, and that Rosario "jumped down in the middle of [Draper's] back" with his knee, pushing his full body weight into Draper. He explained that Rosario then twisted Draper's arm behind his back, and he "heard the bone pop." Draper testified that Rosario then slammed his head against the concrete and that Draper eventually heard someone say, "Get off of him."

Rosario's version of events is quite different. He testified that as he reached for his radio to notify the yard staff that he would be leading an inmate out of the building, Draper unexpectedly "placed his foot on the grill gate, and lunged his body back towards" Rosario. Rosario explained that, while keeping his hands on Draper, he moved out of the way as Draper fell to the ground. He then held Draper down until

---

[1] We take the factual background relating to the altercation between Draper and Rosario from the evidence presented at trial. In doing so, we construe the facts in the light most favorable to the jury's verdict. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Nonetheless, we describe both parties' version of events because an appropriate cost award, discussed in Part II.D, depends in part on "the closeness and difficulty of the issues in the case." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1248 (9th Cir. 2014) (citing *Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 592–93 (9th Cir. 2000) (en banc)).

other officers arrived a few minutes later. Aside from holding Draper down, Rosario denied using any force.

Later that day, Rosario wrote a rules violation report charging Draper with assault on a peace officer. Another staff member, Rogers, ultimately conducted a hearing on the rules violation charge and found Draper guilty. Draper filed several grievances related to these events, including one that accused Rogers of having determined his guilt before the hearing. Draper did not, however, complete the three levels of the administrative appeal process for the grievance against Rogers.[2]

Draper filed a pro se complaint in district court pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights by Rosario, Rogers, and several other defendants ("Defendants").[3] The district court granted Draper in forma pauperis status. After the district court screened the complaint and found that it stated cognizable claims, the court ordered Defendants to respond.

---

[2] In California's prison system, a prisoner may administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1. There is one informal level and three formal levels of review, although lower levels of review may be bypassed by administrators. To satisfy the exhaustion requirement of the PLRA, 42 U.S.C. § 1997e(a), a prisoner is generally required to appeal the grievance and receive a decision at the third level of review. Cal. Code Regs. tit. 15, § 3084.1(b).

[3] Draper's complaint included allegations that a third correctional officer had violated his due process rights by altering a videotape documenting Draper's injuries and that prison medical staff had improperly denied him medical care in violation of the Eighth Amendment. Draper does not challenge the dismissal of these claims.

Defendants moved to dismiss all claims. Relevant to this appeal, Defendants argued that Draper had failed to exhaust his claim against Rogers through the prison grievance process. The district court dismissed Draper's due process claim for failure to exhaust his administrative remedies but declined to dismiss the Eighth Amendment claim against Rosario. Rosario moved for summary judgment, which the district court denied, finding that there were triable issues of fact. The court also appointed pro bono counsel to represent Draper at trial.

Draper proceeded to trial on his claim that Rosario had violated his Eighth Amendment right to be free from excessive force. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Prior to trial, Draper requested that three prisoner eyewitnesses be allowed to testify. The district court issued writs of habeas corpus ad testificandum for two witnesses, Mario Thompson and John Doe.[4] The court denied Draper's request with respect to the third witness, Richard Shepard, because Shepard had been transferred to a different prison and would be more difficult to transport to trial. All three witnesses had observed the altercation between Draper and Rosario and were prepared to testify that Rosario had slammed Draper against the sally port gate and onto the prison floor while Draper was handcuffed. Shortly before trial was scheduled to begin, Doe contacted Draper's counsel to inform him "that he had received an explicit threat to his life from other inmates if he were to testify at trial." The

---

[4] We do not use this witness's name because he was threatened in prison in connection with this lawsuit. Accordingly, the district court allowed documents with the witness's name to be filed under seal and redacted portions of the transcript that included his name. For ease of discussion, we refer to the witness as "John Doe" or "Doe."

inmates had told him that it was against the rules to "snitch," and counsel believed the threats to be racially motivated. The district court vacated the writ of habeas corpus ad testificandum for Doe and issued a writ for Shepard to testify in Doe's place.

At trial, Draper testified to his version of events, which was supported by the testimony of the two prisoner eyewitnesses (Thompson and Shepard). A third prisoner testified about his own similar prior altercation with Rosario. In addition, a medical expert witness and Draper's investigator both testified. For the defense, Rosario testified, as did Officers Eddie Colter and Pyong Lee, who generally corroborated Rosario's account. The Chief Medical Officer of the California Department of Corrections and Rehabilitation ("CDCR") also testified for the defense regarding Draper's injuries as documented in his prison medical records.

The parties' closing arguments focused on convincing the jury of which version of events was most credible. Rosario's attorney argued that the correctional officer witnesses had "everything to lose" by committing perjury, "in contrast to the inmate witnesses you heard." He explained that "Draper and his inmate witnesses have little, if anything, to lose by committing perjury because they are already in prison," whereas "Colter and Lee, both honorably discharged from military service before their long service with the CDCR, have much to lose. A conviction for perjury would end Lee's career [and] . . . could possibly result in a prison term for both of them." Draper's attorney did not object to these statements, nor did he request a curative instruction.

The jury returned a verdict in favor of Rosario, and the district court entered judgment. Rosario filed an application to tax costs, which Draper opposed. The district court ultimately awarded $3,018.35 in costs against Draper. Draper timely appealed.

## II.

### A.

The PLRA requires prisoners to exhaust available administrative remedies prior to filing a § 1983 lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). We review de novo a district court's dismissal for failure to exhaust. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

Prisoners need only exhaust "available" administrative remedies; remedies are not considered "available" if, for example, prison officials do not provide the required forms to the prisoner or if officials threaten retaliation for filing a grievance. *See McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015); *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc). Draper does not dispute that he failed to exhaust administrative remedies with respect to his procedural due process claim against Rogers. He alleged, however, that prison officials obstructed his efforts to file grievances and administrative appeals. He also argues that the district court applied the wrong standard of review in light of our recent en banc opinion in *Albino v. Baca*.

In *Albino*, we held that because non-exhaustion is an affirmative defense, the defendant bears the burden of proving that an administrative remedy was available to the

prisoner and that he failed to exhaust such remedy. 747 F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* We also clarified in *Albino* that the proper procedure for raising non-exhaustion is by moving for summary judgment rather than by filing an unenumerated Rule 12(b) motion. Fed. R. Civ. P. 12; *Albino*, 747 F.3d at 1169–71. Remand is the usual remedy when the district court fails to follow this procedure. *See, e.g.*, *Bejarano v. Allison*, 622 F. App'x 612 (9th Cir. 2015); *Fratus v. Peterson*, 584 F. App'x 606 (9th Cir. 2014).

Remand is not necessary, however, if the district court's dismissal of the plaintiff's claim can be construed as a grant of summary judgment. In *Williams*, we concluded that "[b]ecause it is clear that the district court considered evidence submitted by the parties in reaching its decision, we construe the district court's [dismissal of the complaint] as a grant of summary judgment on the issue of exhaustion." 775 F.3d at 1191.

Here, Defendants filed an unenumerated Rule 12(b) motion rather than a motion for summary judgment. The magistrate judge's findings and recommendations, however, explained that "[b]ecause care must be taken not to resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned applies the Rule 56 [summary judgment] standards to exhaustion motions that require consideration of materials extrinsic to the complaint." The magistrate judge also correctly recognized that "Defendants bear the burden of proving plaintiff's failure to exhaust." He

ultimately concluded that Draper had failed to rebut Defendants' evidence of non-exhaustion by producing evidence that put material facts into dispute, and the district judge adopted his findings and recommendations. Because the district court applied the correct (summary judgment) standard, remand is not necessary.

In the alternative, Draper argues that even if the district court applied the correct standard, dismissal was improper because Draper provided evidence that put material issues of fact in dispute. In Defendants' motion to dismiss, they identified five grievances that Draper filed regarding the incidents at issue in this lawsuit. Three of these grievances did not pertain to Draper's claim against Rogers, and the other two, which arguably did, were unexhausted: one grievance was cancelled because Draper failed to participate in the grievance interview, and another was rejected as incomplete at the third level of review and was never resubmitted. Defendants attached supporting declarations from prison officials with documentation of these grievances and the rejected appeal. In his pro se opposition to the motion to dismiss, Draper did not contest that his due process claim was unexhausted, but he claimed that there were "Department of Corrections staff, and employees that engaged in impeding and unethical conduct of obstructing Plaintiffs CDC-602's [grievance forms] from being exhausted in a timely manner" (capitalization altered). Draper's complaint also alleged that he had made a "substantial effort to obtain administrat[ive] remedies at C.S.P.-Solano" and that "prison administrat[ors] and employees [had] prohibited and impeded" his efforts to "exhaust[] [his] CDC-602[] administrative remedies" (capitalization altered).

The district court properly concluded that Draper's unsupported allegations were insufficient to create a triable issue of material fact. To meet his burden of production, Draper's verified complaint or pro se opposition needed to include evidence that there was "something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Although pro se pleadings must be construed liberally, *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), the district court did not err in concluding that Draper needed to provide some explanation of the kinds of "impeding and unethical conduct" that prison officials had allegedly undertaken, once Defendants had provided documentation of non-exhaustion and facially legitimate reasons for rejecting Draper's administrative appeals.[5] Draper did not identify any actions that prison staff took that impeded his ability to exhaust his administrative remedies, nor did he otherwise explain why he failed to comply with the administrative process. Because Draper failed to rebut Defendants' evidence of non-exhaustion, the district court properly dismissed his procedural due process claim against Rogers.

## B.

Draper challenges a series of the district court's evidentiary rulings that resulted in the exclusion of witness

---

[5] District courts must advise pro se prisoner litigants of the requirements for opposing a motion for summary judgment pursuant to Rule 56 and, under pre-*Albino* law, for opposing a motion to dismiss for failure to exhaust available administrative remedies. *See Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). Here, the magistrate judge informed Draper of these requirements.

Doe's testimony.  We review the district court's evidentiary rulings for abuse of discretion. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 988 (9th Cir. 2010).

A few days before trial was scheduled to begin, Doe called Draper's counsel to tell him "that he had received an explicit threat to his life from other inmates if he were to testify at trial."  Three inmates had approached him in the yard and threatened to stab him if he testified because it was "against the rules" to "snitch."  Counsel's understanding was that the threat was racially motivated: Draper was black, while Rosario and Doe were white, and the prisoners who threatened Doe were members of a white prison gang.  Doe indicated that he was afraid to testify in court but would be willing to participate in a deposition.

Draper's counsel requested permission to take a video deposition of Doe for presentation at trial.  The district court denied Draper's request to present deposition testimony but granted his alternative request that Shepard—the third eyewitness, who was housed farther away—be permitted to testify in Doe's stead.  On the first day of trial, Draper's counsel requested that Doe be allowed to testify via video transmission from prison, which Doe had recently informed counsel he would be willing to do.  The court denied that request.

At the close of Draper's case-in-chief, counsel requested that Doe's prior sworn statement, taken several months before any threat was made, be admitted into evidence.  The district court also denied this request, and Doe's testimony was not presented to the jury.  Draper argues that the district court erred in denying his application to present Doe's testimony by video deposition, in denying his motion to allow Doe to

testify by simultaneous video transmission, and in excluding Doe's written sworn statement.  We conclude that the district court did not abuse its discretion.

**1.**

Draper argues that the district court erred in denying his motion to take Doe's deposition and present the deposition testimony at trial.   Federal Rule of Civil Procedure 32(a)(4)(E) provides that deposition testimony of an "unavailable witness" may be admitted at trial if the court finds "that exceptional circumstances make it desirable . . . to permit the deposition to be used."  Federal Rule of Evidence 804(a)(2) specifies that for hearsay purposes, a witness is "unavailable" if he refuses to testify despite a court order to do so.  Here, the district court had issued a writ of habeas corpus ad testificandum, which is the normal substitute for a subpoena when the witness is incarcerated. *Cf. Demarest v. Manspeaker*, 498 U.S. 184, 189–91 (1991) (holding that prisoners who testify in federal court are entitled to witness fees under 28 U.S.C. § 1821, even though "prisoners are technically 'produced' under a writ of habeas corpus ad testificandum, rather than summoned by a subpoena").  A writ of habeas corpus ad testificandum thus qualifies as a court order for purposes of Rule 804(a)(2).

Although it would have been within the district court's discretion to authorize Draper to take Doe's deposition, the court was not required to do so.  Significantly, Draper's request to take an additional deposition was on the eve of trial, for the purpose of offering the deposition testimony at trial.   Rule 804(a)(2) would have allowed preexisting deposition testimony to be admitted, but it did not compel the district court to allow Draper to take an additional deposition

when it reasonably concluded that the circumstances did not warrant it. Moreover, the "exceptional circumstances" prong of Rule 32(a)(4) applies only "if the court finds . . . that exceptional circumstances make it *desirable*—in the interest of justice and with due regard to the importance of live testimony in open court—to *permit* the deposition to be used." Fed. R. Civ. P. 32(a)(4) (emphasis added).

The district court reasonably concluded that it would not be "desirable . . . to permit the deposition to be used." *Id.* The court instead granted Draper's alternative request that Shepard be allowed to testify in place of Doe. The grant of alternative relief was reasonable. Draper's attorney's initial declaration, attached to his motion to obtain attendance of prisoner witnesses, contained identical descriptions of Doe's and Shepard's anticipated testimony. A later declaration submitted by Draper's investigator contained more detailed descriptions of each witness's expected testimony, and the descriptions were still very similar. Given the cumulative nature of the testimony of these two witnesses and the fact that both witnesses generally corroborated Draper's account, it was not an abuse of discretion for the district court to conclude that exceptional circumstances did not require taking Doe's deposition for presentation at trial.

**2.**

We also conclude that the district court did not abuse its discretion in denying Draper's motion to allow Doe to testify by video transmission. Federal Rule of Civil Procedure 43(a) provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *See also Beltran-Tirado v. INS,*

213 F.3d 1179, 1185–86 (9th Cir. 2000) (rejecting a due process objection to telephonic testimony); *Alderman v. SEC*, 104 F.3d 285, 288 n.4 (9th Cir. 1997) (affirming an agency's credibility findings based on telephonic testimony). The advisory committee notes, however, state that "[t]he importance of presenting live testimony in court cannot be forgotten" and that contemporaneous transmission "is permitted only on showing good cause in compelling circumstances." Fed. R. Civ. P. 43 advisory committee's note.

Here, the district court expressed reasonable concern over Doe's ability to testify safely, even by contemporaneous video transmission. Draper's initial motion to take Doe's deposition stated that "the witness is willing to testify under oath and be cross examined *at a time not directly linked to trial*" (emphasis added). Presumably, Doe was concerned about testifying during the trial because the prisoners who had threatened him might be suspicious of his absence. Although counsel later clarified that Doe "would be willing to testify live, but by video conference, if basic safety precautions were taken," the district court could reasonably have been concerned that testifying by video might still endanger the witness. Moreover, Doe's testimony was largely cumulative of Shepard's and Thompson's testimony. The district court therefore did not abuse its discretion in denying Draper's motion to allow Doe to testify by video transmission.[6]

---

[6] Draper also argues that the district court abused its discretion by treating the request for live video testimony as a request for reconsideration of her prior ruling regarding the deposition testimony. Even if the district court erred in treating the request as a motion for reconsideration, the decision not to allow the video testimony still would

**3.**

The district court also properly excluded Doe's sworn written statement.  Draper argues that the statement was admissible under the "catchall" hearsay exception, Federal Rule of Evidence 807.  To be admissible under Rule 807, a hearsay statement must, among other factors, be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(3).  During the proffer in support of the request for live video testimony, Draper's counsel argued that Doe's testimony was unique because he "saw Mr. Draper put his foot against the bars to try to prevent his head and body from hitting the bars, [and] the witness was distinct that the foot move was defensive."  While the other prisoner witnesses (Shepard and Thompson) did not provide this exact account, they both testified that Draper was at no time resisting Rosario and that Rosario was the aggressor.  On this record, the district court reasonably concluded that Doe's statement about Draper's defensive foot move was not significantly more probative than the testimony already presented.

**C.**

**1.**

We turn to whether defense counsel's statements during closing argument rendered Draper's trial fundamentally unfair.  Draper argues that defense counsel improperly vouched for the credibility of correctional officers Colter and

---

have been well within the court's discretion.  Thus, any error in applying the wrong legal standard was harmless.  *See* Fed. R. Civ. P. 61.

Lee when he argued that they could lose their jobs or face imprisonment if they lied on the stand, whereas the prisoner witnesses had little to lose by perjuring themselves. Draper did not object to these statements. We conclude that these statements were improper, but it was not plain error for the district court to fail to take sua sponte corrective action.

In the criminal context, we have recognized two types of improper vouching. The first type "consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993), *as amended on denial of reh'g* (Apr. 15, 1993). The second type consists of "suggesting that information not presented to the jury supports the witness's testimony." *Id.*

Statements about the consequences of lying on the stand for a law enforcement officer's career generally fall into the second category because those statements rely on evidence outside the record. In *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005), we characterized the following statement, made by a prosecutor during closing argument, as "clearly improper":

> [The police officer witnesses] had no reason to come in here and not tell you the truth. And they took the stand and they told you the truth. I guess, if you believe [defense counsel], they must have lied at the scene there; they came into this court and they lied to you; they lied to this judge; they lied to me; they lied to my agent, Agent Baltazar. I guess they lied to the dispatcher when they called it in. These are officers that risk losin' their

jobs, risk losin' their pension, risk losin' their livelihood.  And, on top of that if they come in here and lie, I guess they're riskin' bein' prosecuted for perjury.  Doesn't make sense because they came in here and told you the truth, ladies and gentlemen.

The prosecutor's argument that "the existence of legal and professional repercussions served to ensure the credibility of the officers' testimony" was sufficient "for the statement to be considered improper as vouching based upon matters outside the record." *Id.*  Similarly, in *United States v. Combs*, 379 F.3d 564, 574–75 (9th Cir. 2004), we held that a prosecutor engaged in "improper rebuttal based upon matters outside the record" when she argued that "in order to acquit [the defendant], the jury had to believe that agent Bailey [would] risk[] losing his job by lying on the stand." *See also United States v. Boyd*, 54 F.3d 868, 871–72 (D.C. Cir. 1995) (holding that a prosecutor improperly "relied on evidence not in the record" when she argued that police witnesses would not "jeopardize their careers and risk criminal prosecution" for perjury, and collecting cases).

While the first type of vouching—placing the "prestige of the government behind a witness"[7]—is particularly

---

[7] Draper argues that because the jury knew that defense counsel was a government lawyer, the vouching statements carried an improper implication of governmental support, similar to that of a prosecutor. Draper is correct that defense counsel introduced himself to the jurors as "an attorney with the Office of the Attorney General, for the State of California" and introduced his colleague as the "Supervising Deputy Attorney General."  Because we conclude that defense counsel improperly relied on evidence outside the record in his closing argument, we do not decide whether the statements were improper for this additional reason.

problematic in criminal trials, *see Weatherspoon*, 410 F.3d at 1147–48, the second type of vouching—relying on evidence outside the record—is problematic in both civil and criminal trials. During closing argument in a civil case, counsel is permitted to make inferences and advance "plausible argument[s] in light of the record." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004). "By contrast, inferences *unsupported* by the evidence are improper." Robert E. Jones et al., Rutter Group Prac. Guide Fed. Civ. Trials & Evid. Ch. 14-B (2016) (citing *United States v. Ruiz*, 710 F.3d 1077, 1086 & n.6 (9th Cir. 2013)). In *Bird v. Glacier Electric Cooperative, Inc.*, 255 F.3d 1136, 1148–52 (9th Cir. 2001), we found reversible error in a civil case when counsel's statements during closing argument appealed to the racial biases of the jury. We explained that the "broad racial statements" used by plaintiff's counsel were "not specific to the [defendant] or related to the [defendant]'s particular conduct in [that] case," and that there was "no evidence in the record" to support counsel's allegations of bias. *Id.* at 1151. Similarly, in *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192–95 (9th Cir. 2002), we held that plaintiff's counsel's statement during closing argument that she had previously sued the defendant was plainly improper. Both cases, though not addressing vouching specifically, stand for the unremarkable proposition that counsel in a civil trial may not rely on evidence outside the record during closing argument.

Other courts have recognized this principle more directly. In *Spicer v. Rossetti*, 150 F.3d 642, 644 (7th Cir. 1998), an

---

Even if the statements improperly placed the "prestige of the government behind" the correctional officer witnesses, *see Weatherspoon*, 410 F.3d at 1148, they would not rise to the level of plain error for the reasons stated in Part II.C.2 below.

excessive force case brought by a prisoner, the Seventh Circuit ordered a new trial because "the case turned entirely on [the plaintiff]'s credibility, versus that of the guards," and the guards' attorney had made multiple statements that the plaintiff's attorney doubted his client's honesty. Although plaintiff's attorney objected, the court overruled his objections. *Id.* The Seventh Circuit noted that "counsel may not express his beliefs regarding the honesty of the opposing party's witnesses" and that an attorney's opinions regarding witness credibility "have no place in a court of law." *Id.*; *see also Lenard v. Argento*, 699 F.2d 874, 897 (7th Cir. 1983).

The Supreme Court has also recognized that the prohibition on counsel communicating personal beliefs to the jury, including beliefs about witness credibility, extends beyond government prosecutors. In *United States v. Young*, 470 U.S. 1, 8–9 (1985), the Supreme Court stated that "[d]efense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case." The Court quoted the then-current ABA Model Code of Professional Responsibility, which stated:

> In appearing in his professional capacity before a tribunal, a lawyer shall not . . . [a]ssert his personal opinion as to . . . the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to matters stated herein.

*Id.* at 7 n.3 (quoting Model Code of Prof'l Responsibility DR 7-106(C) (Am. Bar Ass'n 1980)). The current version of the

Model Rules similarly states that, in both civil and criminal trials, a lawyer shall not "state a personal opinion as to . . . the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused."  Model Rules of Prof'l Conduct R. 3.4(e) (2015).

In sum, our prior case law indicates that attorneys may not rely on evidence outside the record during closing argument and that prosecutors may not vouch for witnesses' credibility.  We now make clear that the prohibition on improper vouching based on evidence outside the record extends to civil trials.

**2.**

Because Draper's attorney failed to object to opposing counsel's improper statements, our review is for plain error. *Bird*, 255 F.3d at 1148.  In the civil context, "[p]lain error review requires: (1) an error, (2) the error is plain or obvious, (3) the error was prejudicial or [a]ffects substantial rights, and (4) review is necessary to prevent a miscarriage of justice." *Hemmings*, 285 F.3d at 1193.  Reversal "is available only in 'extraordinary cases.'"  *Id.* (quoting *Bird*, 255 F.3d at 1148). We conclude that, although defense counsel's statements were improper, they did not rise to the level of plain error requiring reversal.

During his closing argument, defense counsel argued that the correctional officer witnesses were more credible because they had "no reason to commit perjury" and that they had more to lose by lying on the stand than the inmate witnesses. He explained that "Draper and his inmate witnesses have little, if anything, to lose by committing perjury because they are already in prison," whereas

> Colter and Lee, both honorably discharged
> from military service before their long service
> with the CDCR, have much to lose.    A
> conviction for perjury would end Lee's career.
> And a conviction for perjury would—could
> possibly result in a prison term for both of
> them if they committed perjury.  The same is
> true for Sergeant Fowler and Sergeant Peel.
> They have no reason to commit perjury in this
> case, and they have everything to lose by
> doing so . . . .

These statements are materially indistinguishable from those found improper in *Weatherspoon*, where the prosecutor stated, "[t]hese are officers that risk losin' their jobs, risk losin' their pension, risk losin' their livelihood.  And, on top of that if they come in here and lie, I guess they're riskin' bein' prosecuted for perjury."  410 F.3d at 1146.  In fact, defense counsel in Draper's case expressed more certainty about the consequences of lying on the stand than the prosecutor did in *Weatherspoon*.   In that case, the prosecutor's vouching was improper even though the statements were "not quite as egregious" as a case in which the prosecutor told the jury that they could be "darn sure [the agent] would get fired for perjuring himself."  *Id.* (quoting *Combs*, 379 F.3d at 568) (alteration in original).  In Draper's case, defense counsel stated, without reservation: "A conviction for perjury would end Lee's career."

Although this case is distinguishable from *Weatherspoon* because it is civil rather than criminal, the statements made by defense counsel in Draper's case were more egregious than the improper statements in *Weatherspoon*.  *Cf. Ruiz*, 710 F.3d at 1086 & n.6 (finding no improper vouching where

a prosecutor characterized law enforcement officers as "just doing their jobs, just police officers responding to an emergency call"). Accordingly, defense counsel's statements about the correctional officer witnesses' credibility were improper, and it was error for the district court to allow those statements during closing.

The second prong of the plain error analysis requires the error to be "plain or obvious." *See Hemmings*, 285 F.3d at 1193; *cf. United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that in the criminal context, "[a]t a minimum, [a] court of appeals cannot correct an error pursuant to [Federal Rule of Criminal Procedure] 52(b) unless the error is clear under current law"). The error here does not satisfy that test. At the time of Draper's trial, our circuit precedent had not squarely applied the prohibition on improper vouching in the civil context.[8] As outlined above, neither criminal nor civil lawyers may rely on evidence outside the record when arguing to a jury, and we previously have held that certain types of improper statements during closing argument warrant reversal in civil cases. Nonetheless, this precedent was not sufficiently clear at the time of trial to put the district court on notice that defense counsel's statements were impermissible. Because the court's error was not "plain or obvious" in this case, we need not address the remaining prongs of the analysis.

Thus, because it was not plain error to permit the improper statements, reversal is not required.

---

[8] In *Radwan v. County of Orange*, 519 F. App'x 490, 491 (9th Cir. 2013), an unpublished disposition issued the year before Draper's trial, we explicitly declined to decide "whether the rule against vouching applies to civil trials" because any error in that case was harmless.

### D.

### 1.

Finally, Draper challenges the district court's cost award. We conclude that the court's award of $3,018.35 in costs was an abuse of discretion.

We first address our jurisdiction to review the cost award. A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). But "an order fixing costs in the district court, while an appeal was pending, should be considered an inseparable part of the pending appeal" and need not be separately appealed. *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 567 (9th Cir. 1991) (internal quotation marks omitted); *see Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006) ("[O]ur case law allows a party to contest an award of costs on appeal even if the notice of appeal did not raise the issue expressly."). Treating a cost award as part of the judgment is consistent with 28 U.S.C. § 1920, which provides that "[a] bill of costs shall be filed . . . and, upon allowance, included in the judgment or decree."**[9]**

---

**[9]** Taxable costs, like those awarded against Draper, are limited to a specific set of items delineated in 28 U.S.C. § 1920, which include "fees of the clerk and marshal; certain fees for transcripts; certain fees for printing and witnesses; the costs of copies needed for use in the case; docketing fees; and compensation of court appointed experts and interpreters." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 579 (9th Cir. 2010). Such costs may be taxed against the losing party by "[a] judge or clerk," 28 U.S.C. § 1920, and are treated as part of the final judgment. *See California Union*, 948 F.2d at 567. On the other hand, when a prevailing party moves to recover attorney fees, "the court must, on a party's request, give an opportunity for adversary submissions on the

In *California Union*, 948 F.2d at 567, we addressed a situation precisely analogous to Draper's: the losing party filed a notice of appeal from the final judgment prior to the district court's order taxing costs, and it did not file a separate appeal from the cost award or amend its original notice of appeal. We held that "[a]lthough it would have been impossible for [the losing party] to have filed a notice of appeal from an order that did not exist as of the date of the notice, we determine that the notice of appeal from the judgment incorporates the appeal of the denial of the motion to retax costs." *Id.*; *see also Dawson*, 435 F.3d at 1070. Because Draper filed a timely notice of appeal from the final judgment, and the judgment incorporates the district court's cost award, we have jurisdiction to review the order taxing costs.

## 2.

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." *See also* 28 U.S.C. § 1920. We review a district court's award of costs for abuse of discretion. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 n.12 (9th Cir. 2003). We have interpreted Rule 54(d)(1) as creating "a presumption for awarding costs to

---

motion" and "[t]he court must find the facts and state its conclusions of law." Fed. R. Civ. P. 54(d)(2)(C). Parties claiming entitlement to attorney fees also may, in certain situations, recover non-taxable costs, such as expert fees pursuant to 42 U.S.C. § 1988(c). When a district court enters an award of attorney fees and costs, such award must therefore be separately appealed. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482–83 (9th Cir. 1996).

prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley*, 335 F.3d at 944–45. In *Association of Mexican-American Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc), we explained that Rule 54(d)(1) also "vests in the district court discretion to refuse to award costs." When determining whether to exercise that discretion, we have said that

> [a]ppropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not "an exhaustive list of 'good reasons' for declining to award costs," but rather a starting point for analysis.

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (citing *Ass'n of Mex.-Am. Educators*, 231 F.3d at 592–93). Although the final two factors focus on the financial resources of the parties, proceeding in forma pauperis does not, by itself, exempt a prisoner from paying costs. Indeed, 28 U.S.C. § 1915 provides that when costs are awarded against an indigent prisoner, the prisoner will be required to pay those costs on a monthly payment plan of twenty percent of the prisoner's income from the previous month. *See id.* § 1915(b)(2), (f)(2)(B).[10] Thus, the final two

---

[10] Section 1915(f)(2)(B) provides that "the prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2)." This cross-reference, however, appears to contain a typographical error. "Section 1915(f)(2)(B)

factors must be considered in the context of the record as a whole. In addition, a losing party need not demonstrate that all five factors weigh against imposing costs; rather, the list provides a "starting point for analysis." *Escriba*, 743 F.3d at 1248.

We have affirmed the denial of costs when, for example, a prevailing plaintiff in a contract action recovered substantially less in damages than were initially claimed, and the defendant prevailed on two affirmative defenses. *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022–24 (9th Cir. 2003). We also have affirmed the denial of costs where a plaintiff unsuccessfully challenged her termination under the Family and Medical Leave Act ("FMLA"). In *Escriba*, we applied the *Association of Mexican-American Educators* factors and concluded that individual FMLA cases protect vital rights for workers; that the case was close, turning on conflicting witness testimony and complex FMLA analysis; that taxing costs could chill future FMLA actions; and that the plaintiff had limited financial resources. *Escriba*, 743 F.3d at 1248–49.

In limited circumstances, we have also found an award of costs to be an abuse of discretion. *See Save Our Valley*, 335 F.3d at 945. In *Stanley v. University of Southern California*, 178 F.3d 1069, 1080 (9th Cir. 1999), a former head women's basketball coach sued a university for gender discrimination and breach of contract. After the university prevailed, the district court ordered the plaintiff to pay

---

mistakenly refers to § 1915(a)(2) as the authoritative subsection for the payment process. However, . . . § 1915(a)(2) does not contain a payment procedure. The payment process is actually located in § 1915(b)(2)." *Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999).

$46,710.97 in costs. We held that the court abused its discretion in denying the plaintiff's motion to re-tax costs, both because the award could have left her indigent and because it might chill future civil rights litigation. *Id.* at 1079–80; *cf. Ass'n of Mex.-Am. Educators*, 231 F.3d 572 ("In keeping with our decision in *Stanley*, we note that divesting district courts of discretion to limit or to refuse such overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all.").

Each of the factors outlined in *Association of Mexican-American Educators* counsels against imposing a large cost award in Draper's case.[11] 231 F.3d at 592–93. First, the case has "substantial public importance." *Id.* at 592. Individual Eighth Amendment cases are important for safeguarding the rights and safety of prisoners. *See Escriba*, 743 F.3d at 1248 (citing as evidence of the public importance of the case a "California public official's statement that a case brought on behalf of a single plaintiff as opposed to a class can still be important because these issues 'protect[ ] vital civil rights for women in the work place'" (alteration in original)).

---

[11] The dissent argues that these factors should not govern our review of a district court's decision to award costs to the prevailing party, but instead only to our review of a district court's decision *not* to award costs. Although the district court is not ordinarily required to provide reasons for awarding costs, *cf. Association of Mexican-American Educators*, 231 F.3d at 591–93, the factors relevant to our review of the district court's ruling do not change depending on the outcome of that ruling. In other words, in determining whether it is appropriate to deviate from the ordinary rule of awarding costs to a prevailing party, the district court should consider the same set of factors regardless of what the court ultimately decides.

In addition, the case was close. Draper's evidence of an Eighth Amendment violation was sufficient to survive summary judgment. Ultimately, the case turned on which competing account of events the jurors believed. After closing arguments, the jury deliberated for the remaining half-day and then for several more hours the next morning before returning a verdict for Rosario. After the jury returned its verdict, the district court noted that the case was "well-tried" and "hard-fought."

Moreover, such a large cost award could chill similar lawsuits challenging Eighth Amendment violations in jails and prisons. Many would-be litigants in Eighth Amendment excessive force cases, like Draper, have virtually no resources. Even those with meritorious cases may choose not to risk an unsuccessful lawsuit that could add to the fees and costs associated with conviction and imprisonment. This is particularly true for those whose cases, like Draper's, ultimately turn on the jury's determination of whose account of the event is more credible. We further note that district courts have routinely declined to award costs against prisoners proceeding in forma pauperis under similar circumstances, citing potential chilling effects. *See, e.g.*, *Baltimore v. Haggins*, No. 1:10-CV-00931-LJO, 2014 WL 804463, at \*2 (E.D. Cal. Feb. 27, 2014) (denying \$1,462.61 in costs and noting that "while this Court is what some may call 'inundated' with similar cases filed under section 1983 by indigent inmates, the potential chilling effect of being taxed with costs upon defeat cannot be ignored in cases such as these"); *Meeks v. Parsons*, No. 1:03-CV-6700 OWW, 2010 WL 2867847, at \*2 (E.D. Cal. July 21, 2010) (denying the defendants' motion to recover costs, in part because "an award has the potential to chill meritorious civil rights actions"); *Jimenez v. Sambrano*, No. 04CV1833 L(PCL),

2009 WL 937042, at *1 (S.D. Cal. Apr. 6, 2009) (granting a motion to re-tax costs because "[a]warding a large sum of costs against Plaintiff may have a chilling effect on future civil rights litigants").

The final two factors outlined in *Association of Mexican-American Educators* focus on "the plaintiff's limited financial resources" and "the economic disparity between the parties." *Escriba*, 743 F.3d at 1248 (citing *Ass'n of Mex.-Am. Educators*, 231 F.3d at 592–93). Draper has virtually no resources. At the time he filed his complaint, he had a balance of $0.00 in his prison account, no checking or savings account, no income during the past twelve months, and no assets. He owed $4,779.94 in restitution and $464.02 for other expenses, primarily litigation costs and legal mail, and he was proceeding in forma pauperis. He represented himself in this litigation for several years, until the district court appointed pro bono counsel. There is no comparison between Draper's limited resources and those of the state of California, which bore the defense costs.

Each of the factors listed above is an "[a]ppropriate reason[] for denying costs," *Escriba*, 743 F.3d at 1247–48, or for a reduction in the amount awarded to the prevailing party. In addition, the amount of costs is relevant in determining whether a district court's cost award is an abuse of discretion. In *Save Our Valley*, we explained that

> in the rare occasion where severe injustice will result from an award of costs (such as the injustice that would result from an indigent plaintiff's being forced to pay tens of thousands of dollars of her alleged oppressor's legal costs), a district court abuses its

discretion by failing to conclude that the presumption [in favor of awarding costs] has been rebutted.

335 F.3d at 945; *see Ass'n of Mex.-Am. Educators*, 231 F.3d at 593 (pointing to the "extraordinarily high" cost amount as an appropriate reason to deny costs). Because several factors weigh heavily against a large cost award in this case, and severe injustice would result from such an award, the district court abused its discretion in taxing costs of $3,018.35 against Draper. *See Stanley*, 178 F.3d at 1079–80. Accordingly, we vacate the cost award and remand for the district court to reconsider whether a cost award is warranted, and, if so, an appropriate amount, accounting for the factors discussed above. *See Stanley*, 78 F.3d at 1080.

\*       \*       \*

For the reasons set forth above, we affirm the district court's dismissal of Draper's due process claim and the exclusion of testimony from witness Doe. We hold that counsel in a civil trial may not rely on evidence outside the record to vouch for the credibility of witnesses. On plain error review, however, we conclude that defense counsel's improper statements during closing argument do not warrant reversal. Finally, we hold that the court abused its discretion in taxing $3,018.35 in costs.

The judgment is **AFFIRMED**. The award of costs is **VACATED** and **REMANDED** for further consideration consistent with this opinion.

The parties shall bear their own costs on appeal.

BEA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the judgment in favor of the defendants should be affirmed and thus join Parts I, II.A, II.B, and II.C of the majority opinion. I decline to join Part II.D. The district court did not abuse its discretion in taxing costs against plaintiff John Clint Draper because the district court justifiably followed the presumption of taxing costs against the losing party, here, Draper.

The district court entered judgment in favor of the defendants on June 24, 2014, and entered the order taxing costs against Draper on July 23, 2014. I would affirm the district court's order taxing costs against Draper. Draper sued the defendants; his case went to trial, and he lost. The defendants sought to recoup from Draper $3,018.35 of costs under Federal Rule of Civil Procedure 54(d)(1). Draper does not dispute the amount of costs but contends that the defendants, who prevailed, should not be awarded costs at all. "Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003). The district court, in a reasoned order, followed this presumption and taxed costs against Draper, the losing party. It did not abuse its discretion in doing so.

The majority examines the factors from *Association of Mexican-American Educators v. California*, 231 F.3d 572, 592–93 (9th Cir. 2000) (en banc),[1] and concludes that the

---

[1] "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the

district court abused its discretion when it taxed costs against Draper. Maj. Op. 28–33. The majority makes two mistakes. *First*, it wrongly applies these factors to review the district court's award of costs to the prevailing party, Maj. Op. 30–32, when the factors are "reasons for *refusing to award* costs," *Ass'n of Mex.-Am. Educators*, 231 F.3d at 592 (emphasis added). As we have explained, "A district court deviates from normal practice when it refuses to tax costs to the losing party," and "[t]he [Rule 54(d)] presumption itself provides all the reason a court needs for awarding costs." *Save Our Valley*, 335 F.3d at 945; *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 932 (9th Cir. 2015). *Second*, the majority ignores the fact that the district court already considered these factors—though it was not required to do so, *see Save Our Valley*, 335 F.3d at 945—and analyzes and reweighs the factors de novo, Maj. Op. 28–33, when our role is to review the district court's order taxing costs for abuse of discretion, *see Ass'n of Mex.-Am. Educators*, 231 F.3d at 591. The district court's decision to follow the presumption of taxing costs against the losing party, Draper, was not an abuse of discretion—the district court did not commit legal error, and its decision was not "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc); *see Save Our Valley*, 335 F.3d at 945.

---

plaintiff's limited financial resources, and (5) the economic disparity between the parties. This is not 'an exhaustive list of "good reasons" for declining to award costs,' but rather a starting point for analysis." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (quoting *Ass'n of Mex.-Am. Educators*, 231 F.3d at 593).

The majority can drum up only a single case in which we
held that the district court had abused its discretion when it
taxed costs against the losing party, *Stanley v. University of
Southern California*, 178 F.3d 1069 (9th Cir. 1999). Maj. Op.
29–30. But, in *Stanley*, we did not hold that costs could not be
taxed against the plaintiff, who lost on summary judgment,
"because the award could have left her indigent and because
it might chill future civil rights litigation." Maj. Op. 30.
Rather, we remanded the case for the district court to
reconsider its decision on costs in light of the plaintiff's
limited financial resources and the possible chilling effect an
award of costs could engender, factors the district court did
not consider initially. *Stanley*, 178 F.3d at 1079–80.[2] Here,
the district court did consider those factors and found them
insufficient to overcome the presumption of taxing costs
against the losing party. And, in any event, we later clarified
that district courts are not required to "justify[] routine
awards of costs against losing parties in civil rights cases"
and recognized that *Stanley* instead stands for the narrow
proposition that, "in the rare occasion where severe injustice
will result from an award of costs (such as the injustice that
would result from an indigent plaintiff's being forced to pay
tens of thousands of dollars of her alleged oppressor's legal
costs), a district court abuses its discretion by failing to
conclude that the [Rule 54(d)] presumption has been
rebutted." *Save Our Valley*, 335 F.3d at 945.

This case does not present "the rare occasion where
severe injustice will result from an award of costs." *Id.* The
costs taxed against Draper total $3,018.35, a modest sum and
less than the amount awarded in *Save Our Valley*, where we

---

[2] It is unclear from the district court docket in *Stanley* how the district
court ultimately allocated costs on remand.

concluded that "[n]o such injustice will result from the award of $5,310.55 in this case." *Id.* Draper may pay these costs in installments over time, depending on the income credited to his prison account. *See* 28 U.S.C. § 1915(f)(2). This case presented no legal questions of unusual public importance; rather, as the majority admits, "the case turned on which competing account of events the jurors believed." Maj. Op. 31. The fact that this is a civil rights case is likewise unimportant, because we have affirmed "routine awards of costs against losing parties in civil rights cases," even where the case presented close legal questions of great public importance. *Save Our Valley*, 335 F.3d at 946. That this case was brought by a prisoner should counsel *in favor of* taxing costs against Draper, because Congress enacted the Prison Litigation Reform Act of 1995, of which 28 U.S.C. § 1915(f)(2)'s provision on payment of costs is a part, to *reduce* the quantity of prisoner suits. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

The majority essentially establishes a rule that the presumption of taxing costs against a losing party is rebutted if the losing party is an indigent prisoner whose claim is arguably meritorious and proceeds to trial. There is no legal basis for such a rule. I would affirm the district court's decision to follow the presumption and tax costs against Draper, the losing party.

\* \* \*

Because the majority wrongly finds that the district court abused its discretion by taxing costs against the losing party, Draper, I respectfully dissent from Part II.D of the majority opinion.