NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FEDERAL TRADE COMMISSION,

Plaintiff-Appellee,

v.

QYK BRANDS LLC, DBA Glowyy;
DRJSNATURAL LLC; RAKESH
TAMMABATTULA, individually and as an
officer of QYK Brands LLC,
DRJSNATURAL LLC, EASII, Inc., and
Theo Pharmaceuticals, Inc; JACQUELINE
THAO NGUYEN, individually and as officer
of QYK Brands LLC, DRJSNATURAL LLC
and Theo Pharmaceuticals, Inc; EASII, INC.;
THEO PHARMACEUTICALS, INC.,

Defendants-Appellants.

No. 22-55446

D.C. No. 8:20-cv-01431-PSG-KES

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted September 18, 2023
San Francisco, California

Before: W. FLETCHER, RAWLINSON, and COLLINS, Circuit Judges.
Concurrence by Judge Rawlinson.

Defendants QYK Brands LLC; DRJSNATURAL LLC; EASII, Inc.; Theo

Pharmaceuticals, Inc.; Jacqueline Nguyen; and Rakesh Tammabattula appeal from

_____

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

the district court's grant of summary judgment to the Federal Trade Commission ("FTC") and from the district court's ensuing final judgment awarding injunctive and monetary relief. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and vacate and remand in part.

1. The FTC's operative complaint asserted four causes of action:

(1) a claim brought under § 19(a)(1) of the FTC Act, 15 U.S.C. § 57b(a)(1), alleging that Defendants had violated the FTC's "Mail, Internet, or Telephone Order Merchandise" Rule ("MITOR"), 16 C.F.R. § 435.2; *see also* 15 U.S.C. § 57a(a)(1)(B) (authorizing the FTC to issue rules specifically defining particular acts as unfair acts within the meaning of § 5(a)); *id*. § 57b(a)(1) (authorizing the FTC to bring a civil action against any person who violates such a rule);

(2) a claim brought under § 13(b) of the FTC Act, 15 U.S.C. § 53(b), alleging that Defendants had made deceptive shipping claims in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a);

(3) a further § 13(b) claim alleging that Defendants had violated § 5(a), as well as § 12 of the FTC Act, 15 U.S.C. § 52, by making deceptive claims that one of their products ("Basic Immune IGG") could "effectively treat, prevent transmission of, or reduce the risk of contracting COVID-19"; and

(4) an additional § 13(b) claim alleging that Defendants had violated § 5(a) and § 12 by making false claims that Basic Immune IGG had been "clinically

2

proven and FDA-approved to treat, prevent transmission of, or reduce the risk of contracting COVID-19." The district court granted summary judgment to the FTC on each of these claims, concluding that the undisputed facts established as a matter of law that Defendants committed the alleged violations. Reviewing de novo, *see Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008), we affirm that ruling.

a. With respect to the alleged MITOR violation, Defendants contend that the district court erroneously "applied MITOR as a strict liability rule" and thereby failed to take account of the Covid pandemic's disruptive effect on Defendants' ability to fulfill their offered shipping times. We reject this contention.

Nothing in MITOR required Defendants to commit to delivery within the short time frames that they represented, which included 3–5 days, 5–7 days, and 7–10 days. MITOR states that it is unlawful to solicit an order "unless, at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer . . . [w]ithin that *time clearly and conspicuously stated in any such solicitation*" or, "[i]f no time is clearly and conspicuously stated, within thirty (30) days after receipt of a properly completed order from the buyer." *See* 16 C.F.R. § 435.2(a)(1) (emphasis added). Undisputed evidence shows that Defendants lacked a reasonable basis to expect that they would be able to satisfy their advertised shipping-time claims. At the time that

3

they were continuing to post hand-sanitizer advertisements that said, "In Stock & Ships Today," Defendants had limited inventory and were aware of shipping issues, and yet they processed orders for nearly 150,000 bottles in two weeks. Defendants admit that Tammabattula "became aware of the 'full gravity of the situation'" regarding shipping delays by March 12 or 13, 2020, and that Tammabattula thereafter knew that they "could not keep up with demand." Defendants plainly had no reasonable basis to expect that they could meet the shipping times they continued to advertise, and they thereby violated MITOR. And, for the same reason, they also made deceptive shipping claims in violation of § 5 of the FTC Act.

Moreover, if (as Defendants contend) post-order events make it impossible to fulfill an order within the time stated, MITOR provides that the seller must "offer to the buyer, clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund." 16 C.F.R. § 435.2(b)(1); *see also id*. (stating that any such "offer shall be made within a reasonable time after the seller first becomes aware of its inability to ship within the applicable time set forth in paragraph (a)(1) of this section"). MITOR thus has built into its structure an accommodation for unforeseen disruptions. What MITOR does not allow is for sellers to do what Defendants did here, which is to provide shipping estimates that, at the time those

4

estimates were made, Defendants had no reasonable basis to believe would be met. *Id*. § 435.2(a)(1). In addition, Defendants undisputedly failed, in many cases, to offer customers an actual opportunity to cancel the order and receive a refund. *Id*. § 435.2(b)(1). For example, Defendants informed some customers that orders could not be canceled after the creation of a shipping label and that, if they desired a refund, they would have to await their late shipment and then send it back to Defendants.

b. With respect to the alleged false representations concerning Basic Immune IGG, Defendants contend that there was a disputed issue of fact as to what representations Nguyen made in an interview on a Vietnamese-language television channel. Specifically, Defendants point to Nguyen's declaration providing her own English-language translation of the key statements she made in Vietnamese during that interview, and Defendants argue that the district court improperly resolved a resulting factual dispute as to the actual meaning of what she had said. This contention fails. A declaration proffered in response to a summary judgment motion "must . . . set out facts that would be admissible in evidence[] and show that the . . . declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). But as the district court noted, Nguyen's declaration failed to provide any foundation for concluding that she is "competen[t] to testify as a Vietnamese to English translator." This evidentiary ruling was not an abuse of discretion. *See*

5

*Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("Evidentiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion." (citation omitted)). With that contrary evidence properly excluded, there was no genuine issue of material fact as to the English translation of the statements made.

2. The district court ordered monetary relief in the form of consumer refunds, invoking the authority conferred under § 19(b) of the FTC Act. Specifically, the court ordered Defendants to pay over to the FTC $3,086,239.99, which represented Defendants' net revenue from hand sanitizer sales from March to August 2020. Those funds were then to be used to provide full-price refunds to consumers, but *only* if the consumer affirmatively submitted a "request for a refund" within a 120-day period following notification of the refund program. At the conclusion of the 120-day period, the FTC would then be required to "determine the amount of unclaimed funds" left and then to "return to Defendants" that amount, "less costs of administering the Redress Fund." Defendants challenge the scope of the monetary relief order, but we discern no abuse of discretion. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 607 (9th Cir. 1993).

a. The undisputed facts concerning the unrealistic shipping representations made by Defendants in their internet advertising over an extended period of time are unquestionably sufficient to give rise to a presumption that consumer orders

6

placed during that time period were made in reliance on such material representations and that consumers were injured by the shipping delays. *Figgie*, 994 F.2d at 605–06 (holding that, once the FTC "has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product," a "presumption of actual reliance arises" and, if unrebutted, "injury to consumers has been established").

Defendants have failed to put forward sufficient evidence to rebut this presumption. Defendants posit that only 11% of their sales were attributable to the "In Stock & Ships Today" Google advertising campaign, and they therefore contend that the district court erred in applying the *Figgie* presumption to all purchasers. But this argument overlooks the fact that this Google advertising campaign was not the only time that Defendants made unrealistic claims about delivery timeframes: although the precise time estimates varied, such claims were also made on Defendants' websites and a variety of other social media platforms. Moreover, Defendants' 11% figure is based on an unexplained estimate in a declaration from Tammabattula that lacks adequate foundation. The FTC suggests that the 11% figure "includes only those consumers who clicked on the [Google] ad's link to make their purchase," but there is no basis in the record to conclude that such click-throughs are the *only* purchases that were made in reliance on such advertising.

Defendants also contend that some customers were satisfied with their hand sanitizer, because "there were hundreds of repeat customers," some percentage of customers did receive products within the requisite timeframes, and some customers even sent compliments. We conclude that any such issues were adequately addressed by the district court's requirement that monetary refunds could *only* be provided under the court's remedial order to those consumers who affirmatively asked for one.

b. Defendants also argue that, even if the district court's remedial order could be said to adequately target its monetary relief to injured consumers, the court should not have afforded a full-price refund to all such consumers, especially without any requirement to return the product. On the specific facts of this case, we find no abuse of discretion.

The listed expiration period for the hand sanitizer products was two years, and at the time of the district court's remedial ruling on April 22, 2022, much of the product at issue would already have expired. Moreover, by the time that the FTC would be able to set up the contemplated refund program and provide notification to consumers, the relevant product would have expired by the end of the 120-day period for requesting refunds. Under these unique circumstances, imposing a requirement to return expired or about-to-expire products could reasonably be viewed as pointless and of no value. On that basis, we conclude that

8

the district court did not abuse its discretion in failing to require return of the products as a condition for receiving a full refund.

Defendants also assert that providing full refunds to consumers whose product was only one or two days late overcompensates them for any asserted injury from the delay.  We conclude that, in light of the requirement that no refunds would be given unless a particular consumer affirmatively made such a request, the district court did not abuse its discretion.  That limitation could reasonably be deemed sufficient to screen out any consumers who experienced only a de minimis delay.  And for those who experienced a material delay, a uniform monetary award is a reasonable approximation of individual consumer injury, particularly given the relatively modest price of the sanitizer and the urgency with which consumers sought such products at the beginning of the pandemic.

3.  Defendants also raise a number of challenges to the district court's award of injunctive relief.  We conclude that, with one exception, the district court did not abuse its discretion.

a.  The district court did not abuse its discretion in concluding that there was a sufficient likelihood of future violations to warrant the imposition of an injunction.  *See FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (holding that, as a general rule, injunctive relief under § 13(b) is available "only if

9

the wrongs are ongoing or likely to recur"); *see also CFPB v. Gordon*, 819 F.3d 1179, 1197 (9th Cir. 2016) (stating that a grant of permanent injunctive relief is reviewed for abuse of discretion).

Defendants argue that, in finding that they acted with a "high degree of scienter" in connection with the hand sanitizer sales, the district court misconstrued, as attributable to QYK, general comments that Tammabattula made in a podcast about the difficulties of obtaining sufficient supplies to keep up with demand. This contention is refuted by the podcast itself. In it, Tammabattula prefaces his remarks as reflecting his company's "firsthand" experience in being "one of the few companies here in the U.S. that's trying to produce [personal protective equipment ('PPE')] domestically," an experience that allowed them to "see all the challenges here." Moreover, the district court also relied on ample additional undisputed facts concerning Defendants' awareness of the scope of the problems concerning supply chains and shipping delays.

Defendants also emphasize that the violations occurred only over a period of several months rather than several years and that they recently changed their business model to avoid the sort of direct retail sales that were involved in the violations at issue here. While these are factors that arguably weigh in favor of declining to impose an injunction, the district court reached a contrary conclusion after considering these factors in light of other considerations that, in its view,

10

reflected a potential willingness and continued opportunity to engage in violations of the FTC Act. On the undisputed underlying facts in this record, we cannot say that the decision to impose an injunction was an abuse of discretion.

b. Finally, Defendants challenge the scope of the injunction. Specifically, Defendants argue that the injunction is overbroad to the extent that it permanently bars all Defendants from "advertising, marketing, promoting, or offering for sale, . . . any Protective Goods and Services," which the injunction defines as "any good or service designed, intended, or represented to detect, treat, prevent, mitigate, or cure COVID-19 or any other infection or disease."

"To determine if an injunction is overbroad, we consider '(1) the seriousness and deliberateness of the violation; (2) [the] ease with which the violative claim may be transferred to other products; and (3) whether the [defendant] has a history of prior violations.'" *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (citation omitted). Our review is for abuse of discretion, *id*. at 1101, and we will uphold the injunction "so long as it bears a 'reasonable relation to the unlawful practices found to exist,'" *id*. at 1105 (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 394–95 (1965)). Under these standards, we conclude that the injunction is overbroad only with respect to Defendant Tammabattula.

The district court's decision to permanently bar Nguyen and the corporate

Defendants[1] from the "Protective Goods and Services" industry was not an abuse

of discretion. As the district court correctly noted, Nguyen was "a licensed

pharmacist who had her pharmacy license suspended" for serious misconduct,

including acts of dishonesty, all of which was documented in the record. Given

her willingness to then make false health claims to sell products during the

pandemic (*i.e.*, Basic Immune IGG), the district court acted well within its

discretion in concluding that she and the Defendant corporations should be

enjoined from further participation in the selling of goods or services for the

detection, treatment, prevention, mitigation, or cure of illness. *FTC v. Gill*, 265

F.3d 944, 957 (9th Cir. 2001).

We reach a different conclusion as to Defendant Tammabattula.[2]

Tammabattula's wrongful conduct in this case was limited to the false shipping

claims respecting the hand sanitizer. The record does not reflect that he had any

---

[1] In the district court, the parties agreed that the various corporate Defendants all "operated as a common enterprise" and that each corporate Defendant "is liable for the acts and practices alleged" in the operative complaint. Because Nguyen acted through one or more of these corporate Defendants, who are in turn each concededly fully responsible for each other, any injunctive relief that is appropriate as to Nguyen would properly also extend to all of the corporate Defendants.

[2] The FTC contends that Defendants failed to object to the district court's inclusion of Tammabattula in the injunction below. But even assuming *arguendo* that our review is only for plain error, *Draper v. Rosario*, 836 F.3d 1072, 1084–85 (9th Cir. 2016), we conclude that the plain-error standard is met here. For the reasons we explain, the district court's decision to subject Tammabattula to the same injunction as Nguyen and the corporate Defendants was an obvious error that should be corrected in order to prevent a miscarriage of justice. *Id*.

12

personal involvement in Nguyen's prior misconduct as a pharmacist or in her misrepresentations regarding Basic Immune IGG. Moreover, in contrast to the corporate Defendants, there was no agreement below that Nguyen and Tammabattula were fully liable for each other's conduct, such that any injunction against Nguyen could automatically be extended, in every respect, to Tammabattula. Tammabattula's first-time violation did not reasonably support including him, personally, in the sweeping *permanent* industry ban imposed by the district court.[3] *Cf. Grant Connect*, 763 F.3d at 1097–98, 1105 (upholding permanent injunction entered against defendant whose "business practices ha[d] drawn FTC scrutiny for over a decade[] and ha[d] resulted in three distinct enforcement actions against him"). We leave it to the district court, on remand, to exercise its discretion in determining whether, and to what extent, a more suitably tailored injunction should be imposed with respect to Tammabattula.

For the foregoing reasons, we vacate the injunction as to Tammabattula personally and remand for further proceedings consistent with this decision. The judgment of the district court is otherwise affirmed in all respects.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[3] We do not disturb the injunction to the extent that it prohibits any person (including Tammabattula) from acting "in active concert or participation" with Nguyen or the corporate Defendants in violation of the injunction as to them. We vacate the injunction only insofar as it applies fully to Tammabattula with respect to his future conduct independent of Nguyen or the corporate Defendants.

*FTC v. QYK Brands, LLC*, **Case No. 22-55446**
**Rawlinson, Circuit Judge, concurring in the result:**

    I concur in the result.