**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TOPAZ JOHNSON, | No.23-15299 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-01235-TLN-EFB |
| v. | |
| HIGH DESERT STATE PRISON; SYLVA, Sergeant; BRIAN KIBLER, Warden, | ORDER |
| *Defendants-Appellees*. | |

| | |
|---|---|
| IAN HENDERSON, | No.23-15396 |
| *Plaintiff-Appellant*, | D.C. No. 2:22-cv-01235-TLN-EFB |
| v. | |
| HIGH DESERT STATE PRISON; SYLVA, Sergeant; BRIAN KIBLER, Warden, | |
| *Defendants-Appellees*. | |

Filed July 24, 2025

Before: Susan P. Graber, Consuelo M. Callahan, and Lawrence VanDyke, Circuit Judges.

Order;
Statement by Judge W. Fletcher

# SUMMARY[*]

## Prison Litigation Reform Act

The panel denied a petition for panel rehearing and denied a petition for rehearing en banc in a case in which the panel held that the Prison Litigation Reform Act ("PLRA") does not prohibit prisoners from proceeding together in lawsuits but does require that each prisoner in the lawsuit pay the full amount of the filing fee.

Respecting the denial of rehearing en banc, Judge W. Fletcher, joined by Judge Graber, wrote that the panel majority in this case created a counterintuitive and atextual exception to the uniform rule that in ordinary civil litigation, including in class actions, when multiple plaintiffs join in a single suit under Fed. R. Civ. P. 20, the filing fee is $350. Under the panel majority's holding, in PLRA litigation, if multiple in forma pauperis prisoners join as plaintiffs in a single suit under Rule 20, they each owe the filing fee of $350. Because the plaintiffs are poor, they pay more. Judge W. Fletcher strongly disagrees with this reading of the PLRA. All tools of statutory interpretation—plain meaning of the text, statutory coherence, congressional

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

intent, Supreme Court authority, and practical reality—lead to a different conclusion.

## ORDER

Judge Callahan and Judge VanDyke voted to deny the petition for panel rehearing and rehearing en banc. Judge Graber voted to grant the petition for panel rehearing and recommended granting the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40. Judge Koh did not participate in the deliberations or vote in this case.

The petition for panel rehearing and rehearing en banc is **DENIED**.  Dkt. 56.

W. FLETCHER, J., joined by GRABER, J., respecting the denial of rehearing en banc:

In this Prison Litigation Reform Act ("PLRA") case, the panel majority held that when multiple in forma pauperis ("IFP") prisoner-plaintiffs join under Rule 20 in a single suit, each plaintiff must pay a filing fee of $350. *Johnson v. High Desert State Prison*, 127 F.4th 123, 128–134 (9th Cir. 2025). Judge Graber dissented. *Id.* at 137.  I called this case en banc to challenge the panel's holding.  I respectfully disagree with my colleagues' decision not to grant rehearing en banc.

In ordinary civil litigation when multiple plaintiffs join in a single suit under Rule 20, the filing fee is $350. When plaintiffs file a class action, the fee is $350. In PLRA litigation, when multiple prisoner-plaintiffs join in a single suit under Rule 20 and can afford to pay the entire filing fee up front, the fee is $350.

The panel majority in this case has created a counterintuitive and atextual exception to this uniform rule. Under the panel majority's holding, if IFP prisoners join as plaintiffs in a single suit under Rule 20, they each owe the filing fee of $350. If there are three plaintiffs, the filing fee for their single Rule 20 suit is $1,050. If there are ten plaintiffs, the fee is $3,500. And so on. In short, because the plaintiffs are poor, they pay more.

I strongly disagree with this reading of the PLRA. All tools of statutory interpretation—plain meaning of the text, statutory coherence, congressional intent, Supreme Court authority, and practical reality—lead to a different conclusion.

### A.  Plain Meaning of the Text

The controlling statutory language is contained in 28 U.S.C. §§ 1914(a) and 1915(b).

Here is the general filing fee requirement for civil suits in district court:

> **§ 1914.  District court; filing . . . fees**
> The clerk of each district court shall require *the parties* instituting any civil

action, suit or proceeding in such court . . . to pay a filing fee of $350[.]

28 U.S.C. § 1914(a) (emphasis added). Section 1914(a) tells us that a single filing fee of $350 is required for a civil suit in district court, regardless of the number of plaintiffs: "*[T]he parties*" are required "to pay a filing fee of $350." Section 1914(a) does not distinguish civil suits brought by IFP prisoners from other civil suits. That is, § 1914(a) covers, without differentiation, "any civil action, suit, or proceeding" in district court.

Here is the full text the filing fee portion of the PLRA. It is applicable to IFP prisoner-plaintiffs who bring individual suits:

> **§ 1915. Proceedings in forma pauperis**
> (b)(1) Notwithstanding subsection (a), if *a* prisoner brings a civil action or files an appeal in forma pauperis, *the* prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
> (A) the average monthly deposits to *the* prisoner's account; or
> (B) the average monthly balance in *the* prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
> (2) After payment of the initial partial filing fee, *the* prisoner shall be required to make monthly payments of 20 percent of

the preceding month's income credited to the prisoner's account. The agency having custody of *the* prisoner shall forward payments from *the* prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

(3)  *In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action* or an appeal of a civil action or criminal judgment.

(4)  In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

28 U.S.C. § 1915(b) (emphases added).

Please note two things. First, § 1915(b) addresses only suits brought by single IFP prisoner-plaintiffs. The usage throughout § 1915(b) is singular—"*a* prisoner" and "*the* prisoner." Section 1915(b) says nothing about suits brought by multiple IFP prisoner-plaintiffs. Second, § 1915(b)(3) specifies that "in no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action." Section § 1914(a) specifies that the filing fee "permitted by statute" is $350.

The natural combined reading of §§ 1914(a) and 1915(b) is that when multiple IFP prisoner-plaintiffs join in a single civil action under the PLRA, the total filing fee is $350. The

panel majority has rejected this natural reading of §§ 1914(a) and 1915(b) in favor of an exceedingly unnatural reading.

### B. Statutory Coherence

Section 1915(f)(2), the provision governing the payment of costs paid by IFP prisoner-plaintiffs, contains text parallel to that found in § 1915(b). Section 1915(f)(2) reads as follows:

> (A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.
>
> (B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection [(b)(2)].[1]
>
> (C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

Applying the panel majority's interpretation of § 1915(b) to the text of this nearly identical provision would yield an absurd result. According to the panel majority's interpretation, when costs are awarded against multiple IFP prisoner-plaintiffs who have joined under Rule 20, each

---

[1] As presently codified, § 1915(f)(2)(B) contains a typographical error. It refers to the manner of making payments "as is provided for filing fees under subsection (a)(2)." That provision is (b)(2) rather than (a)(2). *See Draper v. Rosario*, 836 F.3d 1072, 1087 n.10 (9th Cir. 2016); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999) (same). The alteration corrects that error.

prisoner-plaintiff would be responsible for paying the full "amount of the costs ordered by the court." The defendant in such a suit would then recover multiple times the costs he actually incurred solely by virtue of there being multiple plaintiffs. This bizarre result would be reserved only for cases in which the plaintiffs are prisoners proceeding IFP.

## C. Congressional Intent

Legislative history further contradicts the panel majority's decision. Senator Bob Dole and Senator Jon Kyl were cosponsors of the PLRA.

Senator Dole addressed the filing fee requirement:

> Many prisoners filing lawsuits today in Federal court claim indigent status. As indigents, prisoners are generally not required to pay the fees that normally accompany the filing of a lawsuit. In other words, there is no economic disincentive to going to court.

> The Prison Litigation Reform Act would change this by establishing a garnishment procedure: If a prisoner is unable to fully pay court fees and other costs at the time of filing a lawsuit, 20 percent of the funds in his trust account would be garnished for this purpose. . . .

> When average law-abiding citizens file a lawsuit, they recognize that there could be an economic downside to going to court. Convicted criminals should not get preferential treatment. If a law-abiding

> citizen has to pay the costs associated with a lawsuit, so too should a convicted criminal.

Congressional Record–Senate, S14413 (Sept. 27, 1995).  In describing the garnishment procedure established under what became § 1915(b), Senator Dole did not mention any possibility that the normal filing fee assessment would be changed for IFP prisoner-plaintiffs suing jointly under Rule 20.  He compared suits by prisoner-plaintiffs to suits by "average law-abiding citizens" and said that prisoners should not get "preferential treatment."  He did not say that prisoner-plaintiffs should get *worse* treatment.

Senator Kyl also addressed the filing fee requirement:

> Section 2 of the bill covers proceedings in forma pauperis.  It adds a new section to 28 U.S.C. section 1915.  The subsection provides that whenever a Federal, State or local prisoner seeks to commence an action or proceeding in Federal court as a poor person, the prisoner must pay a partial filing fee of 20 percent of the larger of the average monthly balance in, or the average monthly deposits to, his inmate account.  The fee may not exceed the full statutory fee.

Congressional Record–Senate, S 14413 (September 27, 1995).  Senator Kyl specifically mentioned the "full statutory fee" and said that the fee charged to a prisoner-plaintiff may not exceed that fee.

### D.  Supreme Court Authority

There is no Supreme Court case directly on point.  But *Jones v. Bock,* 549 U.S. 199 (2007), comes very close.  The

Court tells us in *Jones* that we should read the PLRA against the background of existing procedural rules, and that we should follow those rules unless the PLRA specifically instructs otherwise.

In *Jones*, the Supreme Court reviewed an interpretation of the PLRA under which prisoner-plaintiffs were required to comply with three procedural requirements not clearly specified in the PLRA. The Sixth Circuit had held (1) that prisoner-plaintiffs must plead administrative exhaustion in their complaint rather than requiring defendants to raise exhaustion as an affirmative defense in their answer; (2) that prisoner-plaintiffs must identify in their administrative complaints filed in the prison all of the defendants that they would later sue; and (3) that prisoner-plaintiffs must plead in their complaint only claims that have been exhausted, on pain of having their entire complaint (including their exhausted claims) dismissed. The Court disagreed with the Sixth Circuit.

In rejecting the first requirement—that prisoners must plead exhaustion—the Court wrote that if Congress had intended in the PLRA to deviate from the usual pleading rule, it would have said so: "[W]hen Congress meant to depart from the usual procedural requirements, it did so expressly." *Id.* at 216. In rejecting the second requirement—that all of the defendants sued under the PLRA must have been identified in a prisoner's administrative complaint—the Court wrote, "Nor does the PLRA impose such a requirement." *Id.* at 218. Finally, in rejecting the third requirement—that a prisoner-plaintiff's complaint contain only administratively exhausted claims— the Court relied on the fact that in enacting the PLRA, Congress did not indicate that it intended to deviate from the normal non-habeas pleading rule. The Court wrote, "If

Congress meant to depart from this norm, we would expect some indication of that, and we find none." *Id.* at 221 (quoting *Robinson v. Page,* 170 F.3d 747, 748–49 (7th Cir. 1999)).

In three different ways, the Court in *Jones* tells us that the panel majority in this case was wrong to go beyond the express text of the PLRA. If Congress had intended in a subset of PLRA cases to deviate from the normal requirement of a single $350 filing fee, it would have "d[one] so expressly." *Id.* The express text of the PLRA does not "impose such a requirement." *Id.* at 218. "If Congress meant to depart from this norm [of a single $350 filing fee], we would expect some indication of that[.]" *Id.* at 221.

The Court tells us in *Jones* that when the PRLA is "silent" on an issue, this is "strong evidence that the usual practice should be followed." *Id.* at 212. The PLRA is silent on the issue whether multiple IFP prisoner-plaintiffs joined under Rule 20 should each pay a filing fee of $350. The panel majority should have followed the "usual practice"— indeed, the uniform practice—of charging a single filing fee of $350.

## E. Practical Reality

Assessing a single filing fee in a Rule 20 suit filed by multiple IFP prisoner-plaintiffs makes practical sense. Assessing a single filing fee provides an incentive for IFP prisoner-plaintiffs with a common issue to join in a single suit. The rule adopted by the panel majority foregoes that incentive, encouraging multiple suits by multiple plaintiffs when a single suit would be more efficient, for both the plaintiffs and the judiciary.

The issue presented in this case may seem esoteric, but it is not. The federal docket is replete with cases filed by prisoners seeking relief from unconstitutional practices and conditions.[2] Almost all of these prisoners are poor. Most prisoners enter prison without any reported earnings in the previous year. Most of those who do have reported income have earned very little.[3] Once incarcerated, they work for very low wages. In California, for example, federal prisons pay $0.08 to $0.37 per hour for their prisoners' labor.[4] To put that in perspective, even some of the highest earning prisoners in California would have to work close to a thousand hours to make the $350 needed to file a single civil action. And that assumes that all of the money is being saved, rather than used to pay for the cost of their detention,[5]

---

[2] *Federal Judicial Caseload Statistics 2024*, U.S. Cts., https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2024-tables.

[3] Adam Looney & Nicholas Turner, *Work and Opportunity Before and After Incarceration*, Brookings Inst., 1–2 (Mar. 2018), https://www.brookings.edu/wp-content/uploads/2018/03/es_20180314_looneyincarceration_final.pdf; *see also* Bernadette Rabuy & Daniel Kopf, *Prisons of Poverty: Uncovering the Pre-Incarceration Incomes of the Imprisoned*, Prison Pol'y Initiative (July 9, 2025), https://www.prisonpolicy.org/reports/income.html.

[4] *Captive Labor: Exploitation of Incarcerated Workers*, ACLU & The Univ. of Chi. Law Sch. Global Hum. Rts. Clinic, 57–58 (Jun. 15, 2022), https://www.aclu.org/publications/captive-labor-exploitation-incarcerated-workers.

[5] *See* Lauren-Brooke Eisen, *America's Dystopian Incarceration System of Pay to Stay Behind Bars*, Brennan Ctr. for Just. (Apr. 19, 2023), https://www.brennancenter.org/our-work/analysis-opinion/americas-dystopian-incarceration-system-pay-stay-behind-bars (noting that

food,[6] medical copays,[7] or communications with family.[8] Given this economic reality, a requirement that each indigent prisoner in a multiple-plaintiff Rule 20 case pay a $350 filing fee makes no sense.

---

prisons charge inmates for room and board); *Is Charging Inmates to Stay in Prison Smart Policy?*, Brennan Ctr. for Just. (Sept. 9, 2019), https://www.brennancenter.org/our-work/research-reports/charging-inmates-stay-prison-smart-policy (same).

[6] *See Cheap Jail and Prison Food Is Making People Sick. It Doesn't Have To*, Vera (Feb. 27, 2024), https://www.vera.org/news/cheap-jail-and-prison-food-is-making-people-sick-it-doesnt-have-to (noting the gouging practices of commissaries, resulting in three out of five formerly incarcerated people reporting as being unable to afford anything from the commissary).

[7] Tiana Herring, *COVID Looks Like It May Stay. That Means Prison Medical Copays Must Go.*, Prison Pol'y Initiative (Feb. 1, 2022), https://www.prisonpolicy.org/blog/2022/02/01/pandemic_copays (noting 40 states and the federal prison system require medical copays for prisoners).

[8] *See* Nicole Loonstyn & Alice Galley, *Low-Cost Phone Calls Benefit Incarcerated People, Their Families, and Criminal Legal Institutions*, Urb. Inst. (Aug. 30, 2023), https://www.urban.org/urban-wire/low-cost-phone-calls-benefit-incarcerated-people-their-families-and-criminal-legal (noting that phone calls in jails and prisons cost $50 to $100 a month); Stephen Raher, *Please Mr. Postman: It's Time to Create a Special Postal Mail Rate for Incarcerated People*, Prison Pol'y Initiative (Aug. 17, 2022), https://www.prisonpolicy.org/blog/2022/08/17/postalrates-2 (noting that "for someone in prison, it could take six hours of work to pay for one postage stamp – and that cost is about to go up even higher"); Nazish Dholakia, *The FCC Is Capping Outrageous Prison Phone Rates, but Companies Are Still Price Gouging*, Vera (Sept. 4, 2024), https://www.vera.org/news/the-fcc-is-capping-outrageous-prison-phone-rates-but-companies-are-still-price-gouging (documenting the price gouging practices of e-messaging services in prison).

F.  Varying Views in the Circuits

The Sixth Circuit analyzed the then-new PLRA in *In re Prison Litigation Reform Act,* 105 F.3d 1121 (6th Cir. 1997). It pointed out the obvious:  "The statute does not specify how fees are to be assessed when multiple prisoners constitute the plaintiffs[.]"  *Id.* at 1137.  Given the failure of the PLRA to deal with multiple-prisoner suits, the Sixth Circuit concluded that the ordinary filing fee rule under § 1914(a) should be followed, with the result that "any fees and costs that the district court . . . may impose shall be equally divided among all the prisoners."  *Id.* at 1138; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999) ("Thus, any fees and costs that a district court or that we may impose must be equally divided among all the participating prisoners.").

Three circuits have gone the other way.  *See Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001); *Boribourne v. Berge*, 391 F.3d 852 (7th Cir. 2004); and *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009).  All three circuits relied on § 1915(b). They concluded that § 1915(b) applies to IFP suits brought by multiple prisoner-plaintiffs, despite the fact that the text of § 1915(b) consistently refers only to IFP suits brought by single prisoner-plaintiffs.

\* \* \*

I write the above in the hope the Supreme Court will grant certiorari.